UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                           :

*In re*                                  :            **Chapter 11**

                                          :

**DAFFY'S, INC.,**                   :            **Case No. 12-13312 (MG)**

                                          :

                   **Debtor.**           :

                                          :
---------------------------------------------------------------x

## ORDER CONFIRMING THE DEBTOR'S PLAN
## <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS FURTHER MODIFIED</u>

Daffy's, Inc., as debtor and debtor in possession (the "***Debtor***"),[1] having proposed and filed the *Debtor's Plan Under Chapter 11 of the Bankruptcy Code*, dated August 1, 2012 [Docket No. 15] (as modified by the Plan Modifications (as hereinafter defined), the "***Plan***"), and the Court having approved the procedures regarding notice and objections relating to the Plan (the "***Confirmation Procedures***"), pursuant to the Confirmation Procedures Order,[2] and the following documents having been filed in support of confirmation of the Plan:

        (a)     those certain affidavits of Muhammed Habib,[3] Calvin Dickson,[4] and Sung Kim[5] attesting to the service of certain confirmation materials approved by the Court pursuant to the Confirmation Procedures Order and in accordance with same (collectively, the "***Service Affidavits***");

---

[1] Capitalized terms not defined herein shall have the meanings attributed to such terms in the Plan.

[2] *Order (I) Scheduling a Confirmation Hearing and (II) Establishing Notice and Objection Procedures for Confirmation of the Debtor's Chapter 11 Plan*, dated August 2, 2012 [Docket No. 31].

[3] *Affidavit of Service of Muhammed Habib*, dated August 16, 2012 [Docket No. 257]; *Amended Affidavit of Service of Muhammed Habib*, dated August 23, 2012 [Docket No. 309].

[4] *Supplemental Affidavit of Service of Calvin Dickson*, dated August 23, 2012 [Docket No. 310]; *Supplemental Affidavit of Service of Calvin Dickson*, dated September 12, 2012 [Docket No. 434]; *Supplemental Affidavit of Service of Calvin Dickson*, dated September 12, 2012 [Docket No. 436].

[5] *Supplemental Affidavit of Service of Sung Kim*, dated September 13, 2012 [Docket No. 442]; *Affidavit of Service of Sung Kim*, dated September 21, 2012 [Docket No. 478].

(b)      those certain affidavits[6] of various individuals attesting to the publication of the notice of the Confirmation Hearing in accordance with the Confirmation Procedures Order (collectively, the "**Publication Affidavits**");

(c)      *Debtor's Plan Under Chapter 11 of the Bankruptcy Code, As Modified*, dated October 11, 2012 [Docket No. 537];

(d)      *Debtor's Plan Under Chapter 11 of the Bankruptcy Code, As Further Modified*, dated February 13, 2013 [Docket No. 948]; and

(e)      those certain declarations of Richard F. Kramer, Vice President of Finance and Secretary to Daffy's Inc., dated October 11, 2012[7] (the "**Original Kramer Declaration**"), February 13, 2013[8] (the "**Supplemental Kramer Declaration**"), and March 21, 2013[9] (the "**Second Supplemental Kramer Declaration**"),

and responses or objections to confirmation of the Plan having been interposed by certain parties

(the "**Objecting Parties**") by the deadline to object to confirmation of the Plan established in the

Confirmation Procedures Order (the "**Plan Objection Deadline**"), with the following objections

withdrawn or resolved prior to the Confirmation Hearing:

(a)      Cigna Health and Life Insurance Company;[10]

(b)      JG Elizabeth, LLC;[11]

---

[6] *Affidavit of Publication*, dated August 9, 2012 [Docket No. 291]; *Affidavit of Publication*, dated August 15, 2012 [Docket No. 292].

[7] *Declaration of Richard F. Kramer in Support of Confirmation of the Debtor's Plan Under Chapter 11 of the Bankruptcy Code*, dated October 11, 2012 [Docket No. 539].

[8] *Supplemental Declaration of Richard F. Kramer in Support of Confirmation of the Debtor's Plan Under Chapter 11 of the Bankruptcy Code, As Further Modified*, dated February 13, 2013 [Docket No. 838].

[9] *Second Supplemental Declaration of Richard F. Kramer in Support of Confirmation of the Debtor's Plan Under Chapter 11 of the Bankruptcy Code, As Further Modified*, dated March 21, 2013 [Docket No. 921].

[10] *Limited Objection of Cigna Health and Life Insurance Company to Debtor's Plan Under Chapter 11 of the Bankruptcy Code*, dated September 10, 2012 [Docket No. 414].

[11] *Objection of JG Elizabeth, LLC to Confirmation of Debtor's Plan Under Chapter 11 of the Bankruptcy Code and Potential Assumption and Assignment of Lease*, dated September 12, 2012 [Docket No. 424]; *Supplemental Objection of JG Elizabeth, LLC to Confirmation of Debtor's Plan Under Chapter 11 of the*

2

(c)    135 East 57th Street LLC;[12]

(d)    50 Broadway Realty Corp.;[13]

(e)    AI 229 West 43rd Street Property Owner, LLC;[14]

(f)    Bay Plaza Community Center, LLC;[15]

(g)    335 Madison Avenue, LLC;[16]

(h)    FC Hanson Associates, LLC and FC Queens Place Associates, LLC;[17] and

(i)    Tannor Partners Credit Fund, LP[18] (collectively, the "***Resolved Objections***");

and the following objections unresolved at the time of the Confirmation Hearing:

(a)    Centre Manhasset, LLC;[19]

---

*Bankruptcy Code, As Modified, Potential Assumption and/or Assignment of Lease and Objection to Proposed Confirmation Order, dated October 15, 2012 [Docket No. 551].*

[12] *135 East 57th Street LLC Omnibus (A) Objection to Proposed Cure Costs; (B) Objection to Confirmation of the Debtor's Plan Under Chapter 11 of the Bankruptcy Code; and (C) Reservation of Rights, dated September 12, 2012 [Docket. No. 430].*

[13] *Objection of 50 Broadway Realty Corp. to Confirmation of Debtor's Chapter 11 Plan, to Purported Assumption and Assignment of Lease Pursuant to the Plan and to Cure Costs Set Forth in Plan, dated September 13, 2012 [Docket No. 439].*

[14] *AI 229 West 43rd Street Property Owner, LLC's Objection to Chapter 11 Plan of Confirmation; Proposed Cure Costs; Potential Assumption and Assignment of Lease; and Reservation of Rights, dated September 12, 2012 [Docket No. 433]; AI 229 West 43rd Street Property Owner, LLC's Supplemental Objection to Debtor's Chapter 11 Plan of Confirmation; Potential Assumption and Assignment of Lease; and Reservation of Rights, dated October 9, 2012 [Docket No. 530].*

[15] *Bay Plaza Community Center, LLC's Limited Objection to Confirmation of the Debtor's Plan Under Chapter 11 of the Bankruptcy Code, Proposed Procedures for Assumption and Assignment of Lease and Proposed Cure Amount, dated September 13, 2012 [Docket No. 440].*

[16] *335 Madison Avenue, LLC's Objection to the Chapter 11 Plan, dated September 13, 2012 [Docket No. 441].*

[17] *Objection of FC Hanson Associates, LLC and FC Queens Place Associates, LLC to Confirmation of the Debtor's Proposed Chapter 11 Plan and Assumption and Assignment of Leases, dated September 19, 2012 [Docket No. 461].*

[18] *Limited Objection of Tannor Partners Credit Fund, LP to Confirmation of Debtor's Plan Under Chapter 11 of the Bankruptcy Code, dated September 13, 2012 [Docket No. 443].*

US_ACTIVE:\44182337\7\39982.0005

(b)      464 Broadway Associates LLC;[20] and

(c)      Levin Management Corporation and DMP Estates, Inc.;[21] (collectively, the "***Outstanding Objections***," and together with the Resolved Objections, the "***Objections***"));

and by the deadline to reply to Objections established in the Confirmation Procedures Order (the "***Reply Deadline***") the Debtor having filed the *Debtor's Omnibus Reply to Objections to Confirmation of the Debtor's Plan Under Chapter 11 of the Bankruptcy Code* [Docket No. 541] (the "***Reply***"); and each of the Objections having been resolved, overruled, or withdrawn at or prior to the hearing to consider confirmation of the Plan (the "***Confirmation Hearing***"); and the Court having held the Confirmation Hearing on March 25, 2013; and upon the record of the Chapter 11 Case, as well as the evidence admitted and arguments of counsel made at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor,

**It is FOUND, CONCLUDED, and ADJUDGED as follows:[22]**

## I.      The Chapter 11 Case

1.      On August 1, 2012 (the "***Commencement Date***"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the

---

[19] *Objection of Centre Manhasset, LLC to Debtor's Proposed Cure Amount in Connection with Debtor's Assumption of its Unexpired Real Property Leases*, dated September 13, 2012 [Docket No. 437]; *Limited Objection of Centre Manhasset, LLC to Confirmation of Debtor's Plan Under Chapter 11 of the Bankruptcy Code*, dated October 16, 2012 [Docket No. 525].

[20] *Objection of 464 Broadway Associates LLC to Debtor's Assumption of Real Property Lease Pursuant to Proposed Chapter 11 Plan*, dated September 13, 2012 [Docket No. 438].

[21] *Objection of Levin Management Corporation and DMP Estates, Inc. to Debtor's Plan Under Chapter 11 of the Bankruptcy Code and Potential Assumption and Assignment of Leases*, dated September 13, 2012 [Docket No. 444].

[22] The following, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4

"***Bankruptcy Code***").  Since the Commencement Date, the Debtor has continued to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee has been appointed in the Chapter 11 Case.

2.      During the Chapter 11 Case, the Debtor has complied with all provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "***Local Bankruptcy Rules***") and all orders of the Court.[23]  The Debtor has complied with the operating guidelines and financial reporting requirements of the United States Trustee for Region 2 (the "***U.S. Trustee***") by timely filing all operating reports and financial statements, and maintaining and providing proof of insurance.[24]  The Debtor has timely paid all statutory fees required to be paid during the Chapter 11 Case, including all amounts due to the U.S. Trustee, and has filed all fee statements required to be filed.[25]  The Debtor has timely filed its schedules, lists of executory contracts and leases, and statements of financial affairs.[26]

## II.      The Negotiations of the Plan and the Events Leading up to the Chapter 11 Case

3.      In an attempt to restructure its business and accelerate growth, in 2011, the Debtor hired a new senior management team, including a new Chief Executive Officer, a new Chief Operating Officer/Chief Financial Officer, and a new Chief Merchandising Officer.[27] However, as a result of the continued economic downturn and increased competition in the

---

[23] Original Kramer Declaration ¶ 4.

[24] *Id.*; Monthly Operating Reports [Docket Nos. 510, 581, 634, 713, 766].

[25] Original Kramer Declaration ¶ 4.

[26] Schedules of Assets and Liabilities, dated August 1, 2012 [Docket No. 18]; Amended Schedules of Assets and Liabilities, dated August 13, 2012 [Docket No. 216]; Statement of Financial Affairs, dated August 1, 2012 [Docket No. 17].

[27] Original Kramer Declaration ¶ 5.

US_ACTIVE:\44182337\7\39982.0005

discount fashion market – including an increase in online discount retailers – the Debtor suffered a net operating loss of approximately $11,368,000 in 2011.[28]  As a result of the losses suffered in 2011, the Debtor began to experience liquidity problems and was out of compliance with certain covenants in its financing agreements with Wells Fargo.[29]

4.    In November of 2011, the Debtor entered into certain amendments to its Revolving Credit Loan Agreement and its Term Credit Loan Agreement.[30]  In such amendments, the Debtor acknowledged that it would not be able to comply with its obligation under Section 9.6(a)(iii) of the Term Loan Credit Agreement and the Revolving Credit Loan Agreement to deliver year-end financial statements and was not in compliance with the Fixed Charge Coverage Ratio (as defined in the Term Loan and Revolving Credit Loan Agreements) contained in Section 9.17 of the Term Loan Credit Agreement and the Revolving Credit Loan Agreement for the financial reporting period ended October 2, 2011.[31]

5.    Despite the Debtor's efforts to improve liquidity and restructure its business, the Debtor continued to operate at a loss, and, by early 2012, it became apparent that the strategies implemented by the Debtor's new management team had not taken hold.[32]  In light of the Debtor's continuing losses and declining sales performance, the Debtor's board of directors fired the new management team in early 2012 and attempted to save the company by, among other things, cutting the company's cost structure.[33]

---

[28] *Id.*

[29] *Id.*

[30] *Id.* at ¶ 6.

[31] *Id.*

[32] *Id.* at ¶ 8.

[33] *Id.*

US_ACTIVE:\44182337\7\39982.0005

6.      On February 29, 2012, the Debtor once again amended its Term Loan Credit Agreement.  The purpose of this amendment was to ease certain of the financial covenants under the Term Loan Credit Agreement.[34]

7.      Between April 2012 and June 2012, however, the Debtor's sales performance continued to decline by approximately $1 million - $1.5 million a month, and the Debtor's board of directors recognized that without a significant new equity infusion, which was unavailable, the Debtor would soon violate certain loan covenants contained in various real estate loan agreements and would likely trigger a material adverse change default under its prepetition term loan with Wells Fargo.[35]  On June 5, 2012 and June 7, 2012, Wells Fargo served the Debtor with default notices.[36]  In light of the Debtor's circumstances, including, among other things, such mounting liquidity concerns and looming defaults under its credit facility, the board decided that the Debtor would best be able to maximize its assets through a sale of the Debtor's leasehold interests and a liquidation of the Debtor's inventory.[37]  To that end, the Debtor's management and the board analyzed its options for effectuating a sale of its leasehold interests and a liquidation of its inventory, as well as preparing for a potential filing under chapter 11 of the Bankruptcy Code.[38]

8.      Over a period of approximately five months, the Debtor engaged in good faith, arm's length negotiations with Jericho Acquisitions I LLC (together with its designees and

---

[34] *Id.* at ¶ 9.

[35] *Id.* at ¶ 10.

[36] *Id.*

[37] *Id.*

[38] *Id.*

US_ACTIVE:\44182337\7\39982.0005

assigns, the "**Purchaser**") on the terms of a potential deal.[39]  These negotiations led to the

subsequent execution of an *Asset Purchase, Assignment, and Support Agreement*, dated July 18,

2012 (as amended by that certain Third Amended and Restated Term Sheet, dated as of

February 19, 2013 (the "**February 19 Term Sheet**"), the "**Purchase Agreement**"), by and among

the Debtor, Marcia Wilson, and the Wilson 2003 Family Trust, as sellers, and the Purchaser.[40]

The Purchase Agreement provides for, among other things, the Purchaser's payment of aggregate

cash consideration of $42.5 million in exchange for the sale of certain of the Debtor's real

property leasehold interests and fixtures (exclusive of any additional consideration to reimburse

the Debtor for certain expenses or certain rejection damages claims).[41]  At the closing under the

Purchase Agreement, the Purchaser will pay the Debtor cash in the amount of $35 million,

subject to certain adjustments, including a credit for the Jericho I DIP Facility and amounts

previously paid pursuant to the Purchase Agreement to the Debtor towards the Purchase Price (as

defined in the Purchase Agreement), and execute a note in favor of the Debtor in the principal

amount of $7.5 million, payable in equal annual installments of $2.5 million on the first, second,

and third anniversary of the Effective Date.[42]  One of the conditions imposed by the Purchaser,

as reflected by the terms of the Purchase Agreement, was that the sale of certain assets be

---

[39] *Id.* at ¶ 12.

[40] *See Motion of the Debtor for an Order (I) Approving Debtor's (A) Assumption of Asset Purchase, Assignment, and Support Agreement, (B) Assumption, Assignment, and Sale of Unexpired Lease to Purchaser, (C) Entry Into Assignment Agreement, and (D) Payment of Purchaser Transaction Expenses and (II) Extending the Time to Assume or Reject Unexpired Leases Pursuant to Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014*, dated August 1, 2012 [Docket No. 12].

[41] *See* Purchase Agreement § 2.5; February 19 Term Sheet.

[42] *See* Exhibit "B" to February 19 Term Sheet; Supplemental Kramer Declaration ¶ 5.

US_ACTIVE:\44182337\7\39982.0005

consummated pursuant to the terms of a chapter 11 plan.[43]  By order, dated August 8, 2012, the

Court, *inter alia*, approved the Debtor's assumption of the Purchase Agreement pursuant to

section 365(a) of the Bankruptcy Code.[44]

> 9.    After a prepetition auction process to identify which liquidator would
provide the greatest return on the Debtor's existing inventory, the Debtor also entered into that
certain *Agency Agreement*, dated July 31, 2012, with a joint venture comprised of Gordon
Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC (together, the "***Agent***") by
which the Debtor sold substantially all of its remaining inventory.[45]  On August 7, 2012, the
Court, *inter alia*, approved the Agency Agreement and related sale procedures.[46]

> 10.    Subsequently, on the Commencement Date, the Debtor proposed the Plan.
Based upon the foregoing, the evidence establishes that the Debtor proposed the Plan in good
faith with the legitimate and honest purpose of effectuating the transactions set forth in the
Purchase Agreement and maximizing the value available for distribution to creditors and equity

---

[43] Original Kramer Declaration ¶ 12.

[44] *See Order Approving Debtor's (A) Assumption of Asset Purchase, Assignment, and Support Agreement, (B) Assumption, Assignment, and Sale of Unexpired Lease to Purchaser, (C) Entry Into Assignment Agreement, and (D) Payment of Purchaser Transaction Expenses Pursuant to Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014*, dated August 8, 2012  [Docket No. 115].

[45] *See Motion of Debtor for an Order (I) Authorizing Debtor to Sell Assets Through Store Closing Sales, (II) Approving (A) Assumption of Agency Agreement and (B) Store Closing Sale Procedures, (III) Exempting the Debtor from Compliance with Contractual and Statutory Store Closing Sale Restrictions, and (IV) Granting Related Relief Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6003 and 6004*, dated August 1, 2012 [Docket No. 16].

[46] *Order (I) Authorizing the Debtor to Sell Assets Through Store Closing Sales, (II) Approving (A) Assumption of Agency Agreement and (B) Store Closing Sale Procedures, (III) Exempting the Debtor from Compliance with Contractual and Statutory Store Closing Sale Restrictions, and (IV) Granting Related Relief Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6003 and 6004*, dated August 7, 2012 [Docket No. 78].

US_ACTIVE:\44182337\7\39982.0005

interest holders.[47]  The Plan is the product of extensive, arm's length negotiations between the

Debtor and creditors of the Debtor.[48]  The Plan reflects the culmination of these negotiations and

the substantial input received from each party.[49]

11.    In accordance with Bankruptcy Rule 3016(a), the Plan is dated and

identifies the Debtor as the proponent thereof.

## III.    The Process of Distributing the Confirmation Packages

### A.    Approval of Confirmation Procedures Motion

12.    Pursuant to the Confirmation Procedures Order, the Court found that no

disclosure statement was necessary as all classes of creditors are conclusively presumed to have

accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and were not entitled to

vote on the Plan.

### B.    Service of Confirmation Packages

13.    In accordance with the Confirmation Procedures, Donlin, Recano &

Company, Inc. (the "**_Noticing Agent_**") caused to be served Confirmation Packages (as defined in

the Confirmation Procedures Order) upon the following parties:

    (a)    the U.S. Trustee;

    (b)    the Securities and Exchange Commission, the Internal Revenue
Service, and the United States Attorney's Office for the Southern
District of New York;

    (c)    all creditors who were listed on the Debtor's Schedules or who
filed a proof of claim within one week before the Plan Objection
Deadline;

---

[47] Original Kramer Declaration ¶¶ 25-26; Second Supplemental Kramer Declaration ¶ 16.

[48] Original Kramer Declaration ¶ 25.

[49] *Id.*

US_ACTIVE:\44182337\7\39982.0005

(d)    all parties to executory contracts and unexpired leases listed on the Debtor's Schedules;

(e)    certain of the Debtor's former employees and other vendors;

(f)    the attorneys of record for all parties to pending litigation against the Debtor (as of the date of the entry of the Confirmation Procedures Order);

(g)    all equity security holders; and

(h)    any other party that filed a request for service of pleadings in the Chapter 11 Case pursuant to Bankruptcy Rule 2002 within one week before the Plan Objection Deadline.

14.    Confirmation Packages contained the notice of the Confirmation Hearing (the "***Confirmation Hearing Notice***") and the Plan.

15.    The Confirmation Procedures Order required the Debtor to complete service of the Confirmation Packages by August 9, 2012, and the Debtor timely completed such service in accordance with the Confirmation Procedures Order.[50]  Service of the Confirmation Packages was due, proper, and sufficient, and no further notice is necessary.

16.    All persons required to receive notice of the Confirmation Hearing have received proper, timely, and adequate notice in accordance with the Confirmation Procedures Order and have had an opportunity to be heard with respect thereto.

### C.    Publication of the Confirmation Hearing Notice

17.    The Confirmation Procedures authorized and directed the Debtor to publish the Confirmation Hearing Notice once in *The New York Times* and *Women's Wear Daily* within five business days after the date of the Confirmation Procedures Order (*i.e.*, by August 9,

---

[50] *See* Service Affidavits.

US_ACTIVE:\44182337\7\39982.0005

2012).  On August 9, 2012, the Debtor published the Confirmation Hearing Notice in each of

these publications.[51]

### D. The Debtor Has Complied with Bankruptcy Rule 2002(c)(3)

18.    Bankruptcy Rule 2002(c)(3) provides that, if a plan provides for an

injunction against conduct not otherwise enjoined under the Bankruptcy Code, the Confirmation

Hearing Notice shall (a) include in conspicuous language (bold, italic, or underlined text) a

statement that the plan proposes an injunction; (b) describe briefly the nature of the injunction;

and (c) identify the entities that would be subject to the injunction.

19.    In compliance with Bankruptcy Rule 2002(c)(3), the Plan and the

Confirmation Hearing Notice describe briefly the nature of the injunction against certain actions

set forth in Section 10.4 of the Plan in specific and conspicuous language and identify the entities

that would be subject to the injunction.

### E. The Objection Deadline

20.    The Confirmation Procedures Order set September 13, 2012 at 4:00 p.m.

(Eastern Time) as the Plan Objection Deadline to interpose objections or responses to

confirmation of the Plan and October 11, 2012 as the reply deadline for the Debtor to reply to

any Objections.

### F. Plan Modifications

21.    On October 11, 2012, and February 13, 2013, the Debtor filed

modifications to the Plan (collectively, the "***Plan Modifications***").  The Plan Modifications do

not adversely affect the treatment of any Claim or Equity Interest held by any Creditor or Equity

---

[51] *See* Publication Affidavits.

US_ACTIVE:\44182337\7\39982.0005

Interest holder.[52]  The Debtor served notice of the Plan Modifications upon those parties entitled

to receive notice.  Service by the Debtor of the Plan Modifications was due, proper, and

sufficient and no further notice is necessary.

IV.    **Confirmation of the Plan**

    A.    **The Confirmation Hearing**

    22.    On March 25, 2013, the Court held the Confirmation Hearing to consider

confirmation of the Plan.  At the hearing, all Objecting Parties had an opportunity to be heard.

    B.    **Jurisdiction, Venue, and Qualifications as a Debtor and Plan Proponent**

    23.    Pursuant to 28 U.S.C. §§ 1334 and 157, the Court has jurisdiction over the

Chapter 11 Case.  Pursuant to 28 U.S.C. §§ 1408 and 1409, venue of the Chapter 11 Case was

proper as of the Commencement Date and continues to be proper.

    24.    The Debtor is an entity qualified to be a debtor under section 109 of the

Bankruptcy Code, and the Debtor is a proper proponent of the Plan under section 1121(a) of the

Bankruptcy Code.

    C.    **Burden of Proof**

    25.    The Debtor has satisfied its burden of proof of producing evidence that the

Plan complies with sections 1129(a) and 1129(d) of the Bankruptcy Code.  Section 1129(b) of

the Bankruptcy Code is inapplicable because every class of the Plan is unimpaired and deemed

to have accepted the Plan.

---

[52] Original Kramer Declaration ¶ 24; Supplemental Kramer Declaration ¶ 18.

US_ACTIVE:\44182337\7\39982.0005

## V.    The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code

26.    Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply

with the applicable provisions of the Bankruptcy Code.  As set forth below, the Plan satisfies all

the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

### A.    The Plan Satisfies Section 1122(a) of the Bankruptcy Code – Classification of Claims and Interests

27.    Section 1122(a) of the Bankruptcy Code provides that a plan may classify

a claim or interest in a particular class if such claim or interest is substantially similar to the other

claims or interests of such class.  A classification structure satisfies section 1122 of the

Bankruptcy Code when a reasonable basis exists for the structure, and the claims or interests

within each particular class are substantially similar.  *See Aetna Casualty & Surety Co. v. Clerk*

*(In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996); *In re Jersey City Med. Ctr.*, 817 F.2d

1055, 1060-61 (3d Cir. 1987); *In re U.S. Truck Co.*, 800 F.2d 581, 586-87 (6th Cir. 1986); *In re*

*LeBlanc*, 622 F.2d 872, 879 (5th Cir. 1980).

28.    Articles III and IV of the Plan classify Claims against, and Equity Interests

in, the Debtor as follows:

(a)    Class 1 (Other Priority Claims)

(b)    Class 2 [RESERVED][53]

(c)    Class 3 (Daffy's Secured Claims)

(d)    Class 4 (General Unsecured Claims)

(e)    Class 5 (Equity Interests)

---

[53] Pursuant to that certain *Final Order (I) Authorizing Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Priority, and (III) Modifying the Automatic Stay Pursuant to Sections 105, 362, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014*, dated January 17, 2013 [Docket No. 765], the Debtor satisfied all claims previously classified in Class 2 (Wells Fargo Secured Claims).

US_ACTIVE:\44182337\7\39982.0005

29.    All Claims and Equity Interests within each class are substantially similar to the other Claims and Equity Interests within that class.[54]  Moreover, because no class is entitled to vote on the Plan, the classification could not have been done for the purpose of creating an impaired consenting class or manipulating voting.  Because Articles III and IV of the Plan separately classify Claims against and Equity Interests in the Debtor together with Claims against or Equity Interests that are substantially similar to the other Claims and Equity Interests of such class, and the Plan does not propose a classification scheme to create an impaired consenting class or to manipulate class voting, the Plan satisfies section 1122(a) of the Bankruptcy Code.

**B.    The Plan Satisfies Section 1123(a)(1) of the Bankruptcy Code – Designation of Classes of Claims and Interests**

30.    Section 1123(a)(1) of the Bankruptcy Code provides that a plan must designate classes of claims and interests.   Article III of the Plan properly and adequately classifies all Claims and Equity Interests required to be so classified, and, accordingly, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.  Section 1123(a)(1) does not require that a plan classify classes of Administrative Expenses or Priority Tax Claims.

**C.    The Plan Satisfies Section 1123(a)(2) of the Bankruptcy Code – Classes that Are Not Impaired by the Plan**

31.    Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify any class of claims or interests that is not impaired under a plan.

32.    The Plan, and specifically Articles III and IV, identifies all classes as unimpaired under the Plan.  Because Articles III and IV of the Plan identify the unimpaired classes, the Plan complies with section 1123(a)(2) of the Bankruptcy Code.

---

[54] Original Kramer Declaration ¶ 22.

US_ACTIVE:\44182337\7\39982.0005

**D.    The Plan Satisfies Section 1123(a)(3) of the Bankruptcy
Code – Treatment of Classes that Are Impaired by the Plan**

33.    Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify the

treatment of each impaired class of claims and equity interests.  Because no classes are impaired

under the Plan, section 1123(a)(3) of the Bankruptcy Code is inapplicable to the Plan.

**E.    The Plan Satisfies Section 1123(a)(4) of the
Bankruptcy Code – Equal Treatment Within Each Class**

34.    Section 1123(a)(4) of the Bankruptcy Code provides that a plan must

provide the same treatment for each claim or interest of a particular class, unless the holder of the

claim or interest agrees to less favorable treatment of such particular claim or interest.  Under the

Plan, each member of each class receives the same treatment as any other member within the

same class.[55]  Because the Plan provides the same treatment for each Claim or Equity Interest in

each class, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

**F.    The Plan Satisfies Section 1123(a)(5) of the
Bankruptcy Code – Adequate Means of Implementation**

35.    Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide

adequate means to implement the plan.  Various provisions of the Plan provide adequate means

for implementation of the Plan.  Without limiting the foregoing, Article V of the Plan provides

for, among other things, the authorization and effectuation of certain corporate actions, including

without limitation, approval of the Purchase Agreement.

36.    Article VI of the Plan contains the provisions governing distribution of

property of the Debtor's estate to creditors entitled to receive distributions under the Plan.  Such

provisions are fair and reasonable.

---

[55] *See* Art. III of the Plan.

US_ACTIVE:\44182337\7\39982.0005

37.    Article VII of the Plan establishes procedures for resolving Disputed Claims.  The procedures set forth in Article VII will facilitate the claims reconciliation and resolution process.  Such procedures are fair and reasonable.

38.    Article VIII of the Plan provides for, *inter alia*, the assumption and rejection of various executory contracts and unexpired leases.  Pursuant to, among other things, certain orders dated January 31, 2013,[56] February 6, 2013,[57] February 28, 2013,[58] and March 18, 2013[59] (collectively, the "***Consensual Extension Orders***"), such orders of the Court as may be entered consistent with the terms of the Consensual Extension Orders, and the Plan, the Debtor retains the right to assume and assign or reject certain nonresidential real property leases.  The Court retains jurisdiction to consider such assumptions and assignments after the entry of this Order and the Effective Date of the Plan and the later assumptions and assignments of such leases shall be treated as, and deemed to be, assumptions and assignments in accordance with and under the Plan.

39.    Based upon the foregoing and the other provisions of the Plan, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

---

[56] *Stipulated Order Extending the Time to Assume or Reject Daffy's Unexpired Lease of Nonresidential Real Property Located at 1900 Northern Boulevard, Manhasset, New York Pursuant to Section 365(d)(4)(B) of the Bankruptcy Code*, dated January 31, 2013 [Docket No. 797].

[57] *Stipulated Order Extending the Time to Assume, Assume and Assign or Reject Daffy's Unexpired Lease of Nonresidential Real Property Located at US Highway 1 and 9 (Spring Street) Elizabeth, New Jersey Pursuant to Section 365(d)(4)(B) of the Bankruptcy Code*, dated February 6, 2013 [Docket No. 818].

[58] *Stipulated Order Further Extending the Time to Assume or Reject Daffy's Unexpired Lease of Nonresidential Real Property Located at 462-468 Broadway, New York, New York Pursuant to Section 365(d)(4)(B) of the Bankruptcy Code*, dated February 28, 2013 [Docket No. 883].

[59] *Third Stipulated Order Further Extending the Time to Assume or Reject Daffy's Unexpired Lease of Nonresidential Real Property Located at 165 Route 4 West, Paramus, New Jersey, Pursuant to Section 365(d)(4)(B) of the Bankruptcy Code*, dated March 18, 2013 [Docket No. 911].

US_ACTIVE:\44182337\7\39982.0005

G.    **The Plan Satisfies Section 1123(a)(6) of the Bankruptcy
Code – Prohibition on the Issuance of Non-Voting Securities**

40.    Section 1123(a)(6) of the Bankruptcy Code requires a plan to provide for

the inclusion in the charter of a debtor, if the debtor is a corporation, of a provision prohibiting

the issuance of non-voting equity securities.  In accordance with Section 5.3 of the Plan, the

Debtor, on the Effective Date or as soon as reasonably practicable thereafter, will amend or

amend and restate its organizational documents, which, as amended or amended and restated,

will contain a provision prohibiting the further issuance of non-voting equity securities.

Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

H.    **The Plan Satisfies Section 1123(a)(7) of the Bankruptcy
Code – Provisions Regarding Directors and Officers**

41.    Section 1123(a)(7) of the Bankruptcy Code requires that a plan contain,

with respect to the manner of selection of any officer, director, or trustee under the plan and any

successor officer, director, or trustee, provisions that are consistent with the interests of creditors

and equity security holders and with public policy.

42.    In accordance with section 1123(a)(7) of the Bankruptcy Code, pursuant

to Section 5.3(a) of the Plan, the Debtor has selected the initial board of directors and officers for

the Post Effective Date Debtor and disclosed the identity and qualifications of such directors and

officers as the Debtor's existing directors and officers.[60]  Because the continuation in office of

the current board of directors and officers of the Debtor is consistent with the interests of

creditors and equity security holders and with public policy, the Plan satisfies section 1123(a)(7)

of the Bankruptcy Code.

---

[60] *See* Section 5.3(c) of the Plan and Original Kramer Declaration ¶ 29.

I.      **The Plan Complies with Section 1123(b)(2) of the
Bankruptcy Code – the Assumption and Rejection of Executory Contracts
and Unexpired Leases Are in the Best Interests of the Debtor**

43.      Section 1123(b)(2) permits a plan to, subject to section 365 of the

Bankruptcy Code, provide for the assumption, rejection, or assumption and assignment of any

executory contract or unexpired lease of the debtor not previously rejected under section 365 of

the Bankruptcy Code.  Section 365 of the Bankruptcy Code permits a debtor to assume or

assume and assign an executory contract or unexpired lease if (a) the debtor cures, or provides

adequate assurance that it will promptly cure, the outstanding defaults under the contract or lease

in accordance with section 365(b)(1) of the Bankruptcy Code, and (b) a valid business reason

justifies the debtor's decision to assume such executory contract or unexpired lease. *See e.g.*,

*ReGen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.)*, 547 F.3d 484, 488-89 (2d Cir.

2008); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d

1095, 1099 (2d Cir. 1993); *Androse Assocs. of Allaire, LLC v. Great Atlantic & Pacific Tea Co.

(In re Great Atlantic & Pacific Tea Co.)*, No. 11-CV-5888, 2012 WL 1622620, at *4-6

(S.D.N.Y. May 8, 2012).

44.      Section 8.1 of the Plan provides for the assumption of the executory

contracts and unexpired leases on Exhibit 8.1 to the Plan.  Section 8.5 of the Plan provides for

the rejection or the assumption and assignment of certain Real Property Leases listed on

Exhibit 1.68 to the Plan.  The Debtor must have the ability to reject, to assume, or to assume and

assign the executory contracts and unexpired leases on Exhibit 1.68 and Exhibit 8.1 for the

Debtor to successfully effectuate the transactions contemplated by the Purchase Agreement and

exit chapter 11 successfully.  Accordingly, the rejection, the assumption, or the assumption and

assignment of such contracts and leases is (a) in the best interests of the Debtor and its estate,

US_ACTIVE:\44182337\7\39982.0005

(b) based upon and within the Debtor's sound business judgment, and (c) necessary to implement the Plan.

45.    When assuming an executory contract or unexpired lease, section 365(b) of the Bankruptcy Code requires the debtor to cure defaults under the contract or lease or provide adequate assurance that it will promptly cure such defaults.  In addition, if there has been a default under such contract or lease, section 365(b)(1)(C) of the Bankruptcy Code requires the debtor to provide adequate assurance of future performance under the contract.  The Debtor has previously set forth for each executory contract or unexpired lease subject to a possible assumption or assumption and assignment, the amount, if any, needed to cure any defaults under such executory contract or unexpired lease as of the Commencement Date.  To the extent that any disputes remain as to the Cure Costs, Section 8.5(b)(iii) of the Plan provides that the Court will address such dispute in a separate order.

46.    Pursuant to Section 8.5 of the Plan, to the extent any other Cure Costs have accrued prior to assumption and assignment but are not calculable until a future date, such as year-end (*e.g.*, common area maintenance charges, real estate taxes), the lessor under any Real Property Lease that is assumed and assigned may seek payment from the Debtor for its *pro rata* share of such Cure Costs up to the date of assignment of such Real Property Lease as and when such Cure Costs would be payable under the terms of the Real Property Lease, but in no event after March 31, 2013.  To the extent that a party has incurred postpetition Cure Costs that are calculable, such party must assert a Claim for those Cure Costs at any time prior to the date that is fourteen (14) days after notice of the assumption and assignment of that party's lease (or such other time as set forth in a Designation Notice with the consent of the lessor).  If the Debtor disputes any asserted postpetition Cure Costs, and the parties are unable to resolve any dispute

US_ACTIVE:\44182337\7\39982.0005

over such Cure Costs, the Court will address such dispute in a separate order. The Debtor, however, will pay any amounts not in dispute on the later of the date on which such Cure Costs are payable in accordance with the terms of the applicable Real Property Lease and the date that is five (5) Business Days after the date on which such assumption and assignment is effective.

47.    Subject to payment of the prepetition amounts described above and any unpaid postpetition cure amounts that a landlord timely asserts are unpaid and owing, the requirements of section 365(b)(1) of the Bankruptcy Code will be satisfied, and no other defaults requiring cure under section 365(b) of the Bankruptcy Code exist. Subject to section 365(d)(4)(B) of the Bankruptcy Code and the Consensual Extension Orders, the initial time has expired under section 365(d)(4)(B) of the Bankruptcy Code and the *Order Extending the Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to Section 365(d)(4)(B) of the Bankruptcy Code*, dated November 29, 2012 [Docket No. 656] for the Debtor to designate a Real Property Lease to be assumed or assumed and assigned. Notwithstanding the foregoing, consistent with section 365(f) of the Bankruptcy Code, and subject to the terms of any Consensual Extension Orders applicable to a Real Property Lease, the Debtor shall have the right, but not the obligation, to assume and assign any Real Property Lease not previously assumed, assumed and assigned, or rejected upon a finding that a proposed assignee has satisfied any applicable requirements of adequate assurance of future performance, either as agreed between the Debtor and the lessor under such Real Property Lease or as determined by an order of the Court.

48.    Section 365 of the Bankruptcy Code also permits a debtor to reject an executory contract or unexpired lease if a valid business reason justifies the debtor's decision to reject such executory contract or unexpired lease. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S.

513, 523 (1984); *Century Brass Prods., Inc. v. Int'l Union, United Auto., Aerospace & Agric.*

*Implement Workers of Am.* (*In re Century Brass Prods., Inc.*), 795 F.2d 265, 271 (2d Cir. 1986);

*S. Chicago Disposal, Inc. v. LTV Steel Co.* (*In re Chateaugay Corp.*), 130 B.R. 162, 164

(S.D.N.Y. 1991).

49.      Section 8.3 of the Plan provides for the rejection of certain executory

contracts and unexpired leases, including those listed on Exhibit 8.3 of the Plan.  In addition,

Section 8.5 of the Plan allows the Debtor to reject certain unexpired leases set forth on

Exhibit 1.68 to the Plan if the Purchaser determines that it does not wish to take an assignment of

any such unexpired leases.  As of the date hereof, the Debtor has rejected five unexpired leases.[61]

Such executory contracts and unexpired leases, together with any additional Real Property

Leases that are deemed rejected or are designated to be rejected from and after the date hereof,

may not be needed by the Post Effective Date Debtor and are, or would be, burdensome to the

Post Effective Date Debtor.  The rejection of such contracts and leases is (a) in the best interests

of the Debtor and its estate, (b) based upon and within the Debtor's sound business judgment,

and (c) necessary to implement the Plan.

50.      Certain landlords under unexpired leases of real property set forth on

Exhibit 1.68 to the Plan have argued that the Plan is proposed in bad faith because any damages

resulting from any rejection of such unexpired leases will be subject to the limitation imposed by

section 502(b)(6) of the Bankruptcy Code.  Section 502(b)(6) of the Bankruptcy Code limits the

amount of a lessor's claim for damages resulting from the termination of a lease of real property.

This provision is applicable in this case.  As set forth in *In re PPI Enters. (U.S.), Inc.*, 228 B.R.

339, 347 (Bankr. D. Del. 1998), *aff'd*, 324 F.3d 197 (3d Cir. 2003), the cap on damages found in

---

[61] *See* Docket Nos. 710, 731, 755, and 785.

US_ACTIVE:\44182337\7\39982.0005

section 502(b)(6) is applicable in all cases in which a lessor asserts damages resulting from the termination of a lease of real property.  The Bankruptcy Code does not allow for a court to review the circumstances or equities of a particular case to determine if section 502(b)(6), or any other section that affects creditor rights, should not be applied.  *Id.* at 346.  Because the Bankruptcy Code does not limit when section 502(b)(6) should be applied, a debtor's solvency is irrelevant to the application of section 502(b)(6) of the Bankruptcy Code.

51.    Moreover, the Debtor had valid business justifications for commencing the Chapter 11 Case, including mounting liquidity concerns, looming defaults under its credit facility, and increased competition in the retail sector.[62]  The Debtor's chapter 11 filing enabled it to enter into the Agency Agreement and conduct the transactions contemplated thereby, enter into the Purchase Agreement and assign unexpired leases free of any anti-assignment provisions, establish a bar date to determine all asserted claims against it, and provide the breathing spell needed to effectuate these transactions and pay creditors in full.[63]  No evidence exists that the Debtor commenced the Chapter 11 Case for the sole purpose of rejecting any particular lease and "taking advantage" of the limitations of section 502(b)(6).  In addition, absent the agreement of the Purchaser to increase the Purchase Price under the Purchase Agreement by the amount of Rejection Damages Claims under most circumstances, the Debtor's estate would not be solvent if all unexpired leases were rejected and the Bankruptcy Code did not cap claims arising from such rejection.[64]

---

[62] Original Kramer Declaration ¶ 26.

[63] *Id.*

[64] *Id.* at ¶ 27.

US_ACTIVE:\44182337\7\39982.0005

J.    **The Plan Complies with Section 1123(b)(3) of the Bankruptcy Code –
Settlement of Claims and Causes of Action**

52.    Section 1123(b)(3)(A) of the Bankruptcy Code permits a plan to provide

for "the settlement or adjustment of any claim or interest belonging to the debtor or the estate."

Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, a debtor may release claims

belonging to the estate if the release is a valid exercise of the debtor's business judgment, is fair

and reasonable, and is in the best interest of the debtor and its estate. *In re DBSD N. Am., Inc.*,

419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009); *In re Spansion, Inc.*, 2010 WL 1292837, at * 21

(Bankr. D. Del. April 1, 2010).  Where such releases are an active part of the plan negotiation

and formulation process, it is a valid exercise of the debtor's business judgment to include a

settlement of any claims a debtor might own against third parties as a discretionary provision of a

plan. *Spansion, Inc.* at *21.  The releases set forth in Section 10.8 of the Plan were negotiated by

the Debtor and various parties in interest as part of the overall plan negotiation and formulation

process.  Accordingly, the releases set forth in Section 10.8 of the Plan are a valid exercise of the

Debtor's business judgment, are fair and reasonable, and are in the best interest of the Debtor and

its estate,[65] and, in turn, the releases satisfy section 1123(b)(3)(A) of the Bankruptcy Code.

VI.    **The Debtor Satisfies Section 1129(a)(2) of the Bankruptcy
Code – the Debtor Has Complied with the Bankruptcy Code**

53.    Section 1129(a)(2) of the Bankruptcy Code provides that the plan

proponent must comply with all applicable provisions of the Bankruptcy Code.  The legislative

history of section 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to

encompass the solicitation and disclosure requirements under sections 1125 and 1126 of the

Bankruptcy Code. *See* H.R. REP. NO. 95-595, at 412 (1977); S. REP. NO. 95-989, at 126 (1978)

---

[65] *Id.* at ¶ 37.

US_ACTIVE:\44182337\7\39982.0005

("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

54.    As all classes are deemed unimpaired under the Plan, the Debtor is not required to file a disclosure statement.  Accordingly, section 1125 of the Bankruptcy Code is inapplicable.  The Debtor has complied with section 1126 of the Bankruptcy Code because all classes, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the Plan because each class is deemed unimpaired.  Because the Debtor has complied with section 1126 of the Bankruptcy Code, and, as discussed herein, all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the orders of this Court in all material respects, the Debtor satisfies section 1129(a)(2) of the Bankruptcy Code.

## VII.    The Plan Satisfies Section 1129(a)(3) of the Bankruptcy Code – the Plan Has Been Proposed in Good Faith and Not By any Means Forbidden by Law

55.    Section 1129(a)(3) provides that a plan must be proposed in good faith and not by any means forbidden by law. *See In re Bd. Of Dirs. Of Telecom Argentina, S.A.*, 528 F.3d 162, 174 (2d Cir. 2008); *Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 649 (2d Cir. 1988); *In re Charter Commc'ns*, 419 B.R. 221, 260 (Bankr. S.D.N.Y. 2009).

56.    The good faith standard in section 1129(a)(3) of the Bankruptcy Code is more narrowly focused than the good faith filing requirement.  *In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998), *aff'd*, 324 F.3d 197 (3d Cir. 2003).  In fact, courts do not even consider a "debtor's motives for filing [its] petition when determining whether the plan

fulfills the good faith requirement of § 1129(a)(3)" of the Bankruptcy Code.  *In re PPI Enters.*
228 B.R. at 347.

57.    The good faith standard requires only that a debtor propose a plan with the
expectation that it can achieve a result consistent with the purposes and objectives of the
Bankruptcy Code.  *See In re Worldcom, Inc.*, No. 02-13533, 2003 WL 23861928, at *51 (Bankr.
S.D.N.Y. 2003) ("[A] plan is proposed in good faith if there is a likelihood that the plan will
achieve a result consistent with the standards prescribed under the Bankruptcy Code.") (quoting
*In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997)).  Even where a chapter 11
plan is proposed to allow a debtor to avail itself of an applicable Bankruptcy Code section, this
does not constitute bad faith.  *See, e.g.*, *In re PPI Enters.*, 228 B.R. 339, 347 (holding that the
Bankruptcy Code "intends to permit debtors to cap the claims of a landlord pursuant to
§ 502(b)(6). . . . [and] the fact that a debtor proposes a plan in which it avails itself of an
applicable Code provision does not constitute evidence of bad faith.").

58.    The Court has examined the totality of the circumstances surrounding the
formulation of the Plan, including, without limitation, the Purchase Agreement, the Agency
Agreement, and the reasons for the commencement of the Chapter 11 Case.  Because the Plan
has been proposed with the legitimate and honest purpose of maximizing the value available for
distribution to stakeholders, the Debtor has proposed the plan in "good faith and not by any
means forbidden by law," and, in turn, the Plan satisfies section 1129(a)(3) of the Bankruptcy
Code.

## VIII.    The Plan Satisfies Section 1129(a)(4) of the Bankruptcy Code – the Plan Provides that Professional Fees and Expenses Are Subject to Court Approval

59.    Section 1129(a)(4) of the Bankruptcy Code requires that all payments
made or to be made by the plan proponent, by the debtor, or by a person issuing securities or

26

acquiring property under the plan, for services or for costs and expenses in or in connection with

the case, or in connection with the plan or incident to the case, have been approved by, or are

subject to approval of, the Court as reasonable.

60.    Because the Court has approved all payments made by the Debtor out of

the ordinary course of business, and Section 2.1(b) of the Plan provides that all payments made

or to be made to any professional retained by an order of the Court will be subject to the Court's

review and approval upon final application of the applicable professional, the Plan satisfies

section 1129(a)(4) of the Bankruptcy Code.

IX.    **The Plan Satisfies Section 1129(a)(5) of the Bankruptcy Code – the Debtor Has
       Disclosed All Necessary Information Regarding Directors, Officers, and Insiders**

61.    Section 1129(a)(5) of the Bankruptcy Code requires that the plan

proponent disclose the identity and affiliation of any individual to serve, after confirmation of the

plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating

in a joint plan with the debtor, or a successor of the debtor under the plan, and to show that the

appointment to, or continuance in, such office of such individual is consistent with the interests

of creditors and equity security holders and with public policy.  Section 1129(a)(5) of the

Bankruptcy Code also requires the plan proponent to disclose the identity of any insider that will

be employed or retained by the Post Effective Date Debtor and the nature of any compensation

for such insider.

62.    Section 5.3(a) the Plan provides, "The initial board of directors and the

officers of the Post Effective Date Debtor shall be the same as the Debtor's board of directors

and officers as of the Commencement Date, and the initial compensation of such directors and

officers as of the Effective Date shall remain the same as the compensation as of the

Commencement Date." The Original Kramer Declaration discloses the identities and nature of

US_ACTIVE:\44182337\7\39982.0005

compensation of those persons who will serve, on the Effective Date, as directors and officers of the Post Effective Date Debtor.[66]  Based on, among other things, the experience, education, and/or particular skills of each individual and the manner of selection of each individual and any successor thereto, the continuation in office of such individuals is consistent with the interests of creditors and equity security holders, and with public policy.  Based upon the foregoing, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

## X.      Section 1129(a)(6) of the Bankruptcy Code Is Not Applicable

63.      Section 1129(a)(6) of the Bankruptcy Code requires that any rate change provided in a plan be approved by, or conditioned on the express approval of, any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor.  Because the Plan does not provide for any changes in the rates that require regulatory approval of any governmental agency, section 1129(a)(6) of the Bankruptcy Code is not applicable.

## XI.     Section 1129(a)(7) of the Bankruptcy Code Is Not Applicable

64.      Section 1129(a)(7) of the Bankruptcy Code requires each creditor or equity interest holder in an *impaired* class to accept the plan of reorganization or receive or retain under such plan an amount, on account of such claim or interest property of a value, as of the effective date of such plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  Because all classes are unimpaired under the Plan, section 1129(a)(7) of the Bankruptcy Code is not applicable.  In

---

[66] *See* Original Kramer Declaration ¶ 29.

US_ACTIVE:\44182337\7\39982.0005

any event, because the Plan pays all creditors in full, with interest where applicable, creditors are

receiving at least as much as they would receive in a chapter 7 liquidation.[67]

## XII.    The Plan Satisfies Section 1129(a)(8) of the Bankruptcy Code -- the Plan Has No Impaired Classes

65.    Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to

each class of claims or interests under a plan, such class either has accepted the plan or is not

impaired under the plan.  Because all classes are unimpaired under the Plan, section 1129(a)(8) is

satisfied.  Courts have held that a creditor who receives payment in full with interest at the

federal judgment rate is not impaired.  *See In re Coram Healthcare Corp.*, 315 B.R. 321, 351

(Bankr. D. Del. 2004) (holding that a class of claims that receives postpetition interest at the

federal judgment rate is not impaired under section 1124(1) of the Bankruptcy Code because the

claimants' rights were altered as a result "of the Code and decisional law under the Code," and

not because of the proposed chapter 11 plan).  In *In re W.R. Grace & Co.*, 2012 WL 2130981, at

*75 (D. Del. 2012), the court held that a creditor is not impaired under section 1124(1) where it

did not receive unmatured postpetition interest at the contract rate due to application of section

502(b)(2) of the Bankruptcy Code.  The *W.R. Grace* court further held that in solvent debtor

cases, applicable case law "can at most be applied here to require [the objecting party] to receive

some form of post-petition interest, regardless of whether or not that interest is at the contractual

rate of interest."  *Id.* at *76-77.  Such reasoning is persuasive, consistent with the Bankruptcy

Code, and applicable to the facts of this case.  Accordingly, all classes are unimpaired under the

Plan.

---

[67] *See id.* at ¶ 15.

US_ACTIVE:\44182337\7\39982.0005

**XIII.  The Plan Satisfies Section 1129(a)(9) of the Bankruptcy Code –
the Plan Provides for Payment in Full of All Allowed Priority Claims**

66.     Section 1129(a)(9) of the Bankruptcy Code provides for the mandatory

treatment of certain claims entitled to priority under the Bankruptcy Code.  As set forth below,

the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

**A.      Payment of Administrative Expenses**

67.     Section 1129(a)(9)(A) of the Bankruptcy Code requires that, unless agreed

otherwise, each holder of a claim specified in section 507(a)(2) or 507(a)(3) of the Bankruptcy

Code will receive cash equal to the allowed amount of such claim on account of such claim on

the effective date of the plan.  Section 507(a)(2) of the Bankruptcy Code specifies administrative

expenses allowed under section 503(b) of the Bankruptcy Code (defined as "Administrative

Expenses" under the Plan) and any fees and charges assessed against the estate under

chapter 123 of title 28 of the United States Code.  Fees and charges assessed against the estate

under chapter 123 of title 28 of the United States Code include any filing and bankruptcy fees

payable pursuant to section 1930 of title 28 of the United States Code.  Section 507(a)(3)

specifies unsecured claims allowed under section 502(f) of the Bankruptcy Code.  Because

unsecured claims allowed under section 502(f) exist only in involuntary cases, and the Debtor's

Chapter 11 Case is a voluntary case, no unsecured claims have been asserted under

section 502(f) of the Bankruptcy Code; accordingly, that particular provision of

section 1129(a)(9)(A) of the Bankruptcy Code does not apply.

68.     Section 2.1(c) of the Plan provides that on the Effective Date, the Jericho I

DIP Facility Claim shall be applied by the Debtor for the benefit of Jericho Acquisitions, as an

offset against the Purchase Price (as defined in the Purchase Agreement) under the Purchase

US_ACTIVE:\44182337\7\39982.0005

Agreement.  Jericho Acquisitions has consensually agreed to this alternative treatment for the Jericho I DIP Facility Claim.

69.     Section 2.1(a) of the Plan provides that each holder of an Allowed Administrative Expense will receive, unless such holder agrees and consents to different treatment,  payment in full, in cash, "on or as soon as reasonably practicable following the later to occur of (a) Effective Date and (b) the date such Administrative Expense becomes an Allowed Administrative Expense."  The Plan, as modified by the Plan Modifications, also requires the assertion of certain Administrative Expenses incurred after October 30, 2012, and extends the deadline for the filing and service of such Administrative Expenses by the date that is forty-five (45) days after the Effective Date.  Such treatment satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.

70.     To date, the Debtor has paid applicable filing fees.[68]  In addition, Section 2.3 of the Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.  Based upon the foregoing, the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code.

**B.     Payment of Priority Tax Claims**

71.     Section 1129(a)(9)(C)-(D) of the Bankruptcy Code requires that, with respect to an unsecured claim of a kind specified in section 507(a)(8) of the Bankruptcy Code or a secured claim that would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8) of the Bankruptcy Code (which Claims are defined as "Priority Tax Claims" under the Plan), unless agreed otherwise, each holder of such a claim will

---

[68] Original Kramer Declaration ¶ 31.

US_ACTIVE:\44182337\7\39982.0005

receive on account of such claim regular installment payments in cash (a) of a total value, as of

the effective of the plan, equal to the allowed amount of such claim; (b) over a period ending not

later than 5 years after the date of the order for relief under section 301, 302, or 303; and (c) in a

manner not less favorable than the most favored non-priority unsecured claim provided for by

the plan (other than cash payments made to a class of creditors under section 1122(b) of the

Bankruptcy Code).

72.    Section 2.2 of the Plan provides that each holder of an Allowed Priority

Tax Claim will receive payment in full.  Based upon the foregoing, the Plan satisfies

section 1129(a)(9)(C)-(D) of the Bankruptcy Code.

### C.    Payment of Other Priority Claims

73.    Section 1129(a)(9)(B) of the Bankruptcy Code requires that, with respect

to a claim kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the

Bankruptcy Code (defined as "Other Priority Claims" under the Plan), unless agreed otherwise,

each holder of such a claim will receive (a) if the class of such claims has accepted the plan,

deferred cash payments of a value, as of the effective date of the plan, equal to the allowed

amount of such claim or (b) if the class of such claims has not accepted the plan, cash on the

effective date of the plan equal to the allowed amount of such claim.

74.    Section 4.1 of the Plan provides that each holder of an Allowed Other

Priority Claims will receive payment in full, in cash, with interest at the Federal Judgment Rate

from the Commencement Date to the Distribution Date.  Accordingly, the Plan satisfies

section 1129(a)(9)(B) of the Bankruptcy Code.

32

### XIV.    The Plan Satisfies Section 1129(a)(11) of
###            the Bankruptcy Code – The Plan Is Feasible

75.    The feasibility test set forth in section 1129(a)(11) of the Bankruptcy Code requires the Court to determine whether "[c]onfirmation of the plan is . . . likely to be followed by liquidation, or the need for further financial reorganization, of the debtor . . ., unless such liquidation or reorganization is proposed in the plan."  "The feasibility test set forth in § 1129(a)(11) requires [the court] to determine independently whether the Plan is workable and has a reasonable likelihood of success."  *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) (quoting *In re Texaco Inc.*, 84 B.R. 893, 910 (Bankr. S.D.N.Y. 1988)).

76.    "The key element of feasibility is whether there exists the reasonable probability that the provisions of the Plan can be performed."  *In re Drexel Burnham*, 138 B.R. at 762.  Here, there is certainly a "reasonable probability" that the Plan can be effectuated as the main component of the Plan is distributions to creditors, and such distributions will be made from cash on hand (or cash that will be paid to the Debtor upon consummation of the Plan).

77.    As set forth in the Second Supplemental Kramer Declaration, the Debtor is able to satisfy the conditions precedent to the Effective Date and otherwise will have sufficient funds to meet its post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Case.[69]  As such, the Debtor has satisfied the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

---

[69] *See* Second Supplemental Kramer Declaration ¶¶ 8-14, 17.

US_ACTIVE:\44182337\7\39982.0005

## XV.     The Plan Satisfies Section 1129(a)(12) of the Bankruptcy Code – All Statutory Fees Have Been or Will Be Paid

78.     Section 1129(a)(12) of the Bankruptcy Code requires that all fees payable under section 1930 of title 28 of the United States Code, as determined by the Court at the hearing on confirmation of the plan, either have been paid, or the plan provides for payment of all such fees on the effective date of the plan.  Section 2.3 of the Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the hearing on confirmation of the Plan, shall be paid by the Debtor on or before the Effective Date.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

## XVI.    Section 1129(a)(13) of the Bankruptcy Code Is Not Applicable

79.     Section 1129(a)(13) of the Bankruptcy Code requires the continuation of payment of all retiree benefits, at the level established pursuant to section 1114 of the Bankruptcy Code for the duration of the period the debtor has obligated itself to provide such benefits.  Because the Debtor does not administer any "retiree benefits" under section 1114 of the Bankruptcy Code,[70] section 1129(a)(13) is not applicable.

## XVII.   Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) Are Not Applicable to the Plan

80.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) are not applicable to the Plan.

## XVIII.  Section 1129(b) of the Bankruptcy Code Is Not Applicable to the Plan

81.     Section 1129(b) of the Bankruptcy Code provides that, if a plan meets all applicable requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8), a court shall confirm a plan notwithstanding such requirement if the plan

---

[70] Original Kramer Declaration ¶ 33.

US_ACTIVE:\44182337\7\39982.0005

does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan.

82.      Section 1129(b) of the Bankruptcy Code is not applicable in this case because the Plan satisfies section 1129(a)(8) of the Bankruptcy Code as all classes under the Plan have been deemed to have accepted the Plan.

## XIX.    The Plan Complies with Section 1129(d) of the Bankruptcy Code

83.      Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.   Because the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933,[71] the Plan complies with section 1129(d) of the Bankruptcy Code.

## XX.    Modifications of the Plan Satisfy the Requirements of Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019

84.      Section 1127 of the Bankruptcy Code provides that the proponent of the plan may modify the plan at any time before confirmation if the plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Bankruptcy Rule 3019 provides that, after a plan has been accepted and before its confirmation, the plan proponent may file a modification of the plan.

85.      Moreover, section 1127(c) of the Bankruptcy Code requires the proponent of a modification to comply with section 1125 of the Bankruptcy Code.  Further disclosure and resolicitation of votes on a modified plan is only required, however, when the modification materially *and* adversely affects parties who previously voted for the plan.  *See*, *e.g.*, *In re Federal-Mogul Global Inc.*, 2007 Bankr. LEXIS 3940, *113 (Bankr. D. Del. 2007) (additional

---

[71] *Id.* at ¶ 34.

US_ACTIVE:\44182337\7\39982.0005

disclosure under section 1125 is not required where plan "modifications do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor"); *Beal Bank, S.S.B. v. Jack's Marine, Inc.*, (*In re Beal Bank, S.S.B.*), 201 B.R. 376, 380 n.4 (E.D. Pa. 1996) (further disclosure and solicitation not required under section 1127(b) and (c) where modifications to the plan were immaterial); *In re Century Glove, Inc.*, 1993 U.S. Dist. LEXIS 2286, at *12 (D. Del. Feb. 10, 1993) (upholding bankruptcy court's finding that section 1127 did not require further disclosure and resolicitation of votes on plan modification that altered the treatment to only one creditor when "the modification at issue did not materially and adversely impact any creditor that voted for the Plan"); *In re Am. Solar King Corp.*, 90 B.R. 808, 823-24 (Bankr. W.D. Tex. 1988) ("Further disclosure occurs only when and to the extent that the debtor intends to solicit votes from previously dissenting creditors or when the modification materially and adversely impacts parties who previously voted for the plan."); *see also In re Temple Zion*, 125 B.R. 910, 914 (Bankr. E.D. Pa. 1991) (further disclosure pursuant to section 1125 was unnecessary where post-confirmation plan modifications under section 1127(b) affected distribution to only one creditor, but did not affect any allegedly impaired class).

86.     The Plan Modifications do not adversely affect any Creditor or Equity Interest holder.[72]  Moreover, because all classes under the Plan remain unimpaired, no solicitation would be required pursuant to section 1125 of the Bankruptcy Code.  Accordingly, the Plan, as modified by the Plan Modifications, complies with section 1127(c) of the Bankruptcy Code.

87.     As the Plan complies with sections 1122 and 1123 of the Bankruptcy Code, the Plan complies with section 1127(a) of the Bankruptcy Code.

---

[72] *See* Original Kramer Declaration ¶ 24.

US_ACTIVE:\44182337\7\39982.0005

## XXI.   Objections to the Plan

88.   By the Objection Deadline, the Objecting Parties interposed their respective Objections.  In accordance with the Confirmation Procedures Order, the Debtor filed its Reply to the Objections by the Reply Deadline and served the same upon the Notice Parties and all Objecting Parties.[73]  Service of the Reply was due, proper, and sufficient and no further notice is necessary.

89.   The Resolved Objections are as follows:

(a)   Tannor Partners Credit Fund, LP;[74]

(b)   AI 229 West 43rd Street Property Owner, LLC;[75]

(c)   FC Hanson Associates, LLC and FC Queens Place Associates, LLC;[76]

(d)   135 East 57th Street LLC;[77]

(e)   JG Elizabeth, LLC;[78]

---

[73] Affidavit of Service, dated October 15, 2012 [Docket No. 557].

[74] *Withdrawal of Limited Objection of Tannor Partners Credit Fund, LP to Confirmation of Debtor's Plan*, dated October 15, 2012 [Docket No. 556].

[75] *Stipulated Order Rejecting and Terminating the Debtor's Non-Residential Real Property Lease for the Property Located at 229 West 43rd Street, New York, New York and Resolving All Claims Related Thereto*, dated December 19, 2012 [Docket No. 710].

[76] *Stipulated Order Rejecting and Terminating the Debtor's Non-Residential Real Property Leases for the Properties Located at 88-01 Queens Boulevard, Elmhurst, New York and 139 Flatbush Avenue, Brooklyn, New York and Resolving all Claims Related Thereto*, dated December 27, 2012 [Docket No. 731].

[77] *Stipulated Order Rejecting and Terminating the Debtor's Non-Residential Real Property Lease for the Property Located at 135 East 57th Street, New York, New York and Resolving all Claims Related Thereto*, dated January 14, 2013 [Docket No. 755].

[78] *Notice of Withdrawal By JG Elizabeth, LLC of (I) Objection of JG Elizabeth, LLC To Confirmation of Debtor's Plan Under Chapter 11 of the Bankruptcy Code and to Potential Assumption and Assignment of Lease, and (II) Supplemental Objection of JG Elizabeth, LLC to Confirmation of Debtor's Plan Under Chapter 11 of the Bankruptcy Code, As Modified, Potential Assumption and/or Assignment of Lease and Objection to Proposed Confirmation Order*, dated January 31, 2013 [Docket No. 794].

US_ACTIVE:\44182337\7\39982.0005

(f)     50 Broadway Realty Corp;[79]

(g)     Bay Plaza Community Center, LLC;[80]

(h)     335 Madison Avenue, LLC;[81] and

(i)     Cigna Health and Life Insurance Company.[82]

90.     The Outstanding Objections of the following Objecting Parties have been overruled; *provided*, *however*, that to the extent any Objecting Party (including Objecting Parties whose Objection has been withdrawn) has asserted any objection that relates to the assumption, assumption and assignment, or rejection of a Real Property Lease as to which an order of the Court has not been entered, any such objections are preserved for consideration by the Court in connection with any proposed assumption, assumption and assignment, or rejection of such Real Property Lease:

(a)     Centre Manhasset, LLC;[83]

(b)     464 Broadway Associates LLC;[84] and

(c)     Levin Management Corporation and DMP Estates, Inc.[85]

---

[79] *Notice of Withdrawal of 50 Broadway Realty Corp.'s Objection to the Confirmation of Debtor's Chapter 11 Plan, to Purported Assumption and Assignment of Lease Pursuant to the Plan and to Cure Costs Set Forth in Plan*, dated February 11, 2013 [Docket No. 826].

[80] *Notice of Withdrawal of Bay Plaza Community Center LLC Limited Objection to Confirmation of the Debtor's Plan*, dated March 7, 2013 [Docket No. 892].

[81] *Notice of Withdrawal of 335 Madison Avenue, LLC's Objection to the Chapter 11 Plan [Docket No. 441]*, dated March 18, 2013 [Docket No. 912].

[82] *Limited Objection of Cigna Health and Life Insurance Company to Debtor's Plan Under Chapter 11 of the Bankruptcy Code*, dated September 10, 2012 [Docket No. 414].

[83] *Objection of Centre Manhasset, LLC to Debtor's Proposed Cure Amount in Connection with Debtor's Assumption of its Unexpired Real Property Leases*, dated September 13, 2012 [Docket No. 437]; *Limited Objection of Centre Manhasset, LLC to Confirmation of Debtor's Plan Under Chapter 11 of the Bankruptcy Code*, dated October 16, 2012 [Docket No. 525].

[84] *Objection of 464 Broadway Associates LLC to Debtor's Assumption of Real Property Lease Pursuant to Proposed Chapter 11 Plan*, dated September 13, 2012 [Docket No. 438].

## XXII.  **Other Findings of Fact and Conclusions of Law**

### A.    **Exemption from Transfer Taxes**

91.    Section 1146(a) of the Bankruptcy Code provides that the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code may not be taxed under any law imposing a stamp or similar tax.  *See e.g.*, *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.,* 554 U.S. 33, 41 (2008).

92.    Section 1146(a) of the Bankruptcy Code applies to the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer *under*, in furtherance of, or in connection with the Plan, including, without express or implied limitation, any assignments of any Real Property Leases made pursuant to the Purchase Agreement or in connection with any other dispositions of assets contemplated by the Plan.

### B.    **The Purchaser Is Not a Successor in Interest**

93.    The Purchaser is unaffiliated with the Debtor[86] and negotiated the Purchase Agreement at arm's length.[87]  The Purchaser shall not be deemed to (i) be the successor of the Debtor by reason of any theory at law or in equity, (ii) except with respect to the Real Property Leases and as specifically set forth herein, in the Plan, and in the Purchase Agreement and any other agreements entered into in connection with the Purchase Agreement (including,

---

[85] *Objection of Levin Management Corporation and DMP Estates, Inc. to Debtor's Plan Under Chapter 11 of the Bankruptcy Code and Potential Assumption and Assignment of Leases*, dated September 13, 2012 [Docket No. 444].

[86] *See* Original Kramer Declaration ¶ 12.

[87] *Id.*

US_ACTIVE:\44182337\7\39982.0005

without limitation, any agreements with any Affiliates of the Debtor), assume, incur or be

responsible for any Claims or Liabilities of the Debtor or any of its Affiliates, (iii) have, de facto

or otherwise, merged with or into the Debtor, or (iv) be a mere or substantial continuation of the

Debtor or the enterprise of the Debtor.  The Purchaser shall not assume or have any liability or

obligation for any Claim against the Debtor except for those liabilities specifically assumed by

the Purchaser pursuant to the terms of the Purchase Agreement.

**It is DECREED, ORDERED, and ADJUDGED as follows:**

**I.**

**Confirmation of the Plan**

**A.  Confirmation of the Plan**

       1.      The Plan is **CONFIRMED**.

**B.  Record of the Confirmation Hearing.**

       2.      The record of the Confirmation Hearing is **CLOSED**.

**C.  Objections to the Plan**

       3.      All objections to confirmation of the Plan that have not been withdrawn

prior to entry of this Order or are not cured by the relief granted herein are **OVERRULED** in

their entirety.  All withdrawn objections are deemed **WITHDRAWN WITH PREJUDICE**.

**D.  Modifications to the Plan**

       4.      All holders of Claims or Equity Interests deemed to accept the Plan are

deemed to accept the Plan as modified by the Plan Modifications and any modifications

announced at the Confirmation Hearing.  The Debtor is not required to send further notice of

such modifications.

US_ACTIVE:\44182337\7\39982.0005

5.      After the Confirmation Date, in accordance with Section 12.5 of the Plan, but subject to section 1127(b) of the Bankruptcy Code, the Debtor may alter, amend, or modify the Plan.

## II.

## Implementation of the Plan

### A.   Approval of Transactions and Related Documents

6.      All transactions contemplated under the Plan and documents related thereto are hereby **AUTHORIZED** and **APPROVED**, including, without limitation, the transactions contemplated by the Purchase Agreement.

### B.   Corporate Action

7.      The Debtor and Post Effective Date Debtor are **AUTHORIZED** to take such actions as may become necessary to effectuate the Plan and any transaction contemplated thereby, including without limitation, the transactions contemplated by the Purchase Agreement, without further action or approval being required under applicable law, regulation, order, or rule (including, without limitation, any action by holders of Equity Interests or officers or directors of the Post Effective Date Debtor).

8.      Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Debtor and Post Effective Date Debtor is **EXEMPT** from compliance with any applicable non-bankruptcy laws or regulations related to the transactions contemplated by the Plan, including, without limitation, the transactions contemplated by the Purchase Agreement.

9.      Except as otherwise provided in the Plan, in this Order, or in the Purchase Agreement, from and after the Effective Date, the Purchased Assets (as defined in the Purchase Agreement) shall be purchased, acquired, assumed, and accepted by and vested in the Purchaser free and clear of all Claims, Equity Interests, Liens, charges, encumbrances, and all other rights

41

arising on or before the Effective Date, except for the rights of any lessors from and after the

Effective Date under any Real Property Leases to the extent provided therein, but as may be

limited by this Order.

**C.  Assumption of Contracts**

      **1.**      **Executory Contracts and Unexpired Leases of the Debtor Listed on Exhibit 8.1 to the Plan**

      10.      The assumption by the Debtor of all executory contracts and unexpired

leases identified on Exhibit 8.1 to the Plan is **APPROVED**.

      11.      The cure amounts set forth on Exhibit 8.1 to the Plan are **APPROVED**.

      12.      On the Effective Date, the Debtor shall pay the cure amounts to the

respective contract and lease counterparties of the contracts and unexpired leases on Exhibit 8.1

to the Plan.  Upon the payment of the applicable cure amount, the applicable contract or

unexpired lease shall be **DEEMED ASSUMED** by the Debtor effective as of the Effective Date,

without further action by the Debtor and notwithstanding any provision in such contract or lease

prohibiting assignment or transfer.

      13.      The payment of an applicable cure amount shall constitute the cure of all

defaults arising under the applicable executory contract or unexpired lease in accordance with

section 365(b) of the Bankruptcy Code.

      14.      Upon payment of the applicable cure amount, the applicable contract or

lease counterparty is **BARRED** and **PERMANENTLY ENJOINED** from asserting against the

Debtor any default, claim, or liability existing, accrued or arising, or relating to the applicable

contract or lease on Exhibit 8.1 to the Plan for the period prior to the entry of this Order, *except*

any obligations arising under such contract or lease from and after the Commencement Date but

not yet due and payable under the terms of the applicable contract or lease.

US_ACTIVE:\44182337\7\39982.0005

15.    Notwithstanding anything contained herein or in the Plan, from and after the Effective Date, the Post Effective Date Debtor shall pay, in the ordinary course, any payments of premiums and premium adjustments, all amounts necessary to process and pay eligible healthcare claims arising prior to the Effective Date, and any other amounts due in accordance with the terms and conditions of the contracts with Cigna Health and Life Insurance Company identified on Exhibit 8.1 to the Plan.

### 2.    Unexpired Leases of the Debtor Listed on Exhibit 1.68 to the Plan

16.    Subject to the terms of any applicable Consensual Extension Order, the Debtor shall have the right to assume or reject, either before or after the Effective Date of the Plan, any unexpired leases identified on Exhibit 1.68 of the Plan, upon payment of applicable Cure Costs and upon a finding that a proposed assignee has satisfied any applicable requirements of adequate assurance of future performance, either as agreed between the Debtor and the lessor under such Real Property Lease or as determined by an order of the Court, is **APPROVED**.

17.    Upon payment of the applicable cure amount, the applicable lease counterparty is **BARRED** and **PERMANENTLY ENJOINED** from asserting against the Debtor any default, claim, or liability existing, accrued or arising, or relating to the applicable lease on Exhibit 1.68 to the Plan for the period prior to the entry of this Order; *provided*, *however*, that a lessor shall have fourteen (14) days (or such other time as set forth in a Designation Notice with the consent of the lessor) from the date on which the Debtor provides written notice to the lessor of assumption and assignment to assert any Cure Costs that have accrued and are payable from and after the Commencement Date to the date of the proposed assignments; *provided further*, *however*, to the extent any other Cure Costs have accrued prior to assumption and assignment but are not calculable until a future date, such as year-end (*e.g.*, common area maintenance charges, real estate taxes), the lessor under any Real Property Lease

43

that is assumed and assigned pursuant to Section 8.5(c) of the Plan may seek payment from the

Debtor for its *pro rata* share of such Cure Costs up to the date of assignment of such Real

Property Lease as and when such Cure Costs would be payable under the terms of such Real

Property Lease, but in no event shall any lessor assert such claim after March 31, 2013, and

payment of such Cure Costs shall not be a condition to assumption or assignment of such Real

Property Lease.  Upon assumption of a Real Property Lease, except as provided herein, payment

of the Cure Costs in accordance with the Plan shall constitute the Debtor's only obligation to

cure defaults under the Real Property Lease, and all defaults shall be deemed to have been cured

as of the date of such payment.  If the Debtor disputes any asserted Cure Costs, and the parties

are unable to resolve any dispute over such Cure Costs, the Court will address such dispute in a

separate order; *provided*, *however*, that the Debtor will pay any amounts not in dispute on the

later of the date on which such Cure Costs are payable in accordance with the terms of the

applicable Real Property Lease and the date that is five (5) Business Days after the date on which

such assumption and assignment is effective.

18.    Prior to the Real Property Lease Assumption or Rejection Notice

Deadline, the Debtor shall notify each lessor under a Real Property Lease how its Real Property

Lease will be treated under section 365 of the Bankruptcy Code.  The procedure for assumption

and assignment or rejection of the Real Property Leases set forth in Section 8.5(c) of the Plan is

hereby **APPROVED**.

19.    To the extent that a landlord under any such lease timely objects to the

assignment of a lease on the grounds of a lack of adequate assurance of future performance and

the parties are unable to resolve such objection, the Court will address such objection in a

separate order.  All rights of landlords under the unexpired leases set forth in Exhibit 1.68 to the

44

Plan to object to the assignment of any such lease in accordance with the procedures set forth in Section 8.5 of the Plan on the ground that there has not been demonstrated adequate assurance of future performance by such assignee such counterparty are fully preserved.

### 3.    Insurance Policies or Agreements

20.    To the extent that any insurance policies or agreements of the Debtor are determined to be executory contracts and notwithstanding anything contained in Section 8.1 or 8.3 of the Plan to the contrary, the assumption and, as applicable, assignment by the Debtor of all insurance policies and agreements of the Debtor is **APPROVED**.

21.    Unless the Court determines otherwise pursuant to a Final Order or the parties agree thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any insurance policy or agreement.

22.    On the Effective Date, all insurance policies and agreements of the Debtor, to the extent they constitute executory contracts, shall be **DEEMED ASSUMED** without further action by the Debtor and notwithstanding any provision in such policy or agreement prohibiting assignment or transfer.

## D.  Rejection of Contracts and Unexpired Leases

### 1.    Rejection of Contracts and Unexpired Leases

23.    The rejection by the Debtor of all executory contracts and unexpired leases of the Debtor that either (a) are set forth on Exhibit 8.3 to the Plan to the Plan or (b) (i) are not listed on Exhibit 1.68 or 8.1 to the Plan, (ii) have not been assumed or assumed and assigned by the Debtor with the approval of the Court, *and* (iii) are not the subject of pending motions to assume or assume or assign at the Confirmation Date, is **APPROVED**.  Upon the Effective Date,

US_ACTIVE:\44182337\7\39982.0005

all such executory contracts and unexpired leases of the Debtor shall be **DEEMED REJECTED**

by the Debtor as of the Effective Date without further action by the Debtor.

24.    The rejection procedures pertaining to the Real Property Leases set forth

on Exhibit 1.68 to the Plan and set forth in Section 8.5 of the Plan are **APPROVED**.  Upon

notice of rejection to a lessor under a Real Property Lease, such Real Property Lease shall be

**DEEMED REJECTED** by the Debtor as of later of (i) five days following delivery by the

Debtor of such notice of rejection or (ii) surrender of the premises subject to such Real Property

Lease, without further action by the Debtor.

### 2.    Retrieval of Leased Property

25.    The Debtor has no obligation to return any property to any party to a

rejected executory contract or unexpired lease, but the Debtor shall reasonably cooperate with

any parties seeking to retrieve such property by providing access to such property.

26.    Parties to a rejected contract or unexpired lease shall retrieve any property

the party leased or otherwise furnished to the Debtor under the rejected contract or unexpired

lease and that such lease or contract requires to be returned to such party within **twenty-eight**

**(28) days** after the date of this Order.  If a party fails to retrieve such property, the party shall

forfeit its right to recover such property; ***provided however***, such forfeiture shall not release or

absolve the party for or from any liability or responsibility related to such property.

27.    Any applicable injunction in place within the twenty-eight day period

during which a party to a rejected contract or unexpired lease shall recover its property shall be

deemed modified to permit such recovery.

28.    The Court shall retain exclusive jurisdiction to determine ownership (as

between the Debtor and any non-debtor counterparty to a lease or contract) of any property

sought to be retrieved.

US_ACTIVE:\44182337\7\39982.0005

**E.   Claims Arising from Rejection of Real Property Leases**

29.    To assert a claim arising from the rejection of a Real Property Lease, the applicable lease counterparty shall file a proof of claim (a "***Plan Rejection Proof of Claim***") before **5:00 p.m. (Prevailing Eastern Time)** by no later than the first Business Day that is **twenty-one (21) days** following the effective date of such rejection.  Nothing in this order shall extend or otherwise modify any deadline or requirement for filing claims set forth in the Bar Date Order or in any other applicable order of the Court.

30.    All Plan Rejection Proofs of Claim shall comply with the following requirements:

a.    conform to the proof of claim form approved by the Court pursuant to the Bar Date Order or Official Bankruptcy Form No. 10;

b.    to the extent applicable, limit any claims pursuant to section 502(b)(6) of the Bankruptcy Code, which provision applies in this case;

c.    include any supporting documentation or, if voluminous, a summary or explanation as to why documentation is not available;

d.    be in the English language; and

e.    be denominated in United States Currency.

31.    Plan Rejection Proofs of Claim must be received on or before the applicable deadline by the Debtor's Noticing Agent, the official claims agent in the Debtor's Chapter 11 Case, at the following address:

If by hand delivery or overnight courier:

Donlin, Recano & Company, Inc.
Re: Daffy's, Inc.
419 Park Avenue South, Suite 1206
New York, NY 10016

US_ACTIVE:\44182337\7\39982.0005

If by first-class mail:

        Donlin, Recano & Company, Inc.
        Re: Daffy's, Inc.
        P.O. Box 899
        Madison Square Station
        New York, NY 10010

32.      The Debtor and its Noticing Agent shall ***not*** be required to accept a Plan Rejection Proof of Claim sent by facsimile, telecopy, or electronic mail transmission.

33.      Plan Rejection Proofs of Claim will be deemed timely filed only if ***actually received*** by the Noticing Agent on or before the applicable deadline.

34.      Any contract counterparty that fails to timely file a Plan Rejection Proof of Claim in accordance with this Order on or before the applicable Bar Date is **FOREVER BARRED**, **ESTOPPED**, and **ENJOINED** from asserting and enforcing such claim against the Post Effective Date Debtor, or its estate, assets, properties, or interests in property.

35.      Unless the Court orders otherwise, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article IV of the Plan.

## F.   Specified Administrative Expenses Arising After October 30, 2012

36.      To assert a Specified Administrative Expense (as defined herein) for an expense incurred ***after*** October 30, 2012, a party shall file and serve a proof of Administrative Expense before **5:00 p.m. (Prevailing Eastern Time)** within forty-five (45) days after the Effective Date (the "***Extended Administrative Expense Deadline***").  Except as set forth herein, nothing in this order shall extend or otherwise modify any deadline or requirement for filing claims set forth in the Bar Date Order or in any other applicable Order.

US_ACTIVE:\44182337\7\39982.0005

37.    ***Only*** those persons or entities asserting any of the following types of Administrative Expenses must file proof of such Administrative Expense by the Extended Administrative Expense Deadline (collectively, the "***Specified Administrative Expenses***"):

1.    Any Administrative Expense representing personal injury, property damage, or other tort Claims against the Debtor;

2.    Any Administrative Expense for breach of an obligation – contractual, statutory or otherwise – by the Debtor;

3.    Any Administrative Expense for amounts incurred by the Debtor after the Commencement Date in the ordinary course of the Debtor's business if payment of such amounts is alleged to be overdue by at least 30 days as of the Confirmation Date;

4.    Any Administrative Expense incurred by the Debtor *outside* the ordinary course of business or on other than ordinary business terms, except to the extent the incurrence of such Administrative Expense was approved by the Bankruptcy Court (*e.g.*, the Jericho I DIP Facility Claim) or represents fees and expenses of professionals arising under sections 330, 331, 503(b)(2)–(5) of the Bankruptcy Code;

5.    Any Administrative Expense that would *not* ordinarily be reflected as a payable on the Debtor's books and records or as a liability on the Debtor's financial statements; or

6.    Any Administrative Expense representing an employee Claim against the Debtor, *other than* a Claim for wages, benefits, pension or retirement benefits or expense reimbursement by an employee who is employed by the Debtor as of the Commencement Date.

38.    ***Claimants are only required to file a Proof of Administrative Expense if they believe their Claim constitutes a Specified Administrative Expense.***

39.    All Specified Administrative Expenses shall comply with the following requirements:

a.    conform substantially to the proof of Administrative Expense approved by the Court pursuant to the Bar Date Order;

b.    set forth with specificity the legal and factual basis for the alleged Specified Administrative Expense;

49

c.       include supporting documentation for the Specified Administrative Expense or an explanation as to why such documentation is not available

d.       be in the English language;

e.       be denominated in United States Currency; and

f.       be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

40.     Proofs of Administrative Expenses for expenses incurred *after* October 30, 2012, must be received by the Debtor's Noticing Agent, the official claims agent in the Debtor's Chapter 11 Case, at the following address:

If by hand delivery or overnight courier:

Donlin, Recano & Company, Inc.
Re: Daffy's, Inc.
419 Park Avenue South, Suite 1206
New York, NY 10016

If by first-class mail:

Donlin, Recano & Company, Inc.
Re: Daffy's, Inc.
P.O. Box 899
Madison Square Station
New York, NY 10010

41.     The Debtor and its Noticing Agent shall *not* be required to accept such proofs of Administrative Expenses sent by facsimile, telecopy, or electronic mail transmission.

42.     Such Specified Administrative Expenses will be deemed timely filed only if *actually received* by the Noticing Agent on or before the Extended Administrative Expense Deadline.

43.     Any entity that fails (or failed) to timely file a proof of Administrative Expense in accordance with this Order or the Bar Date Order on or before the applicable deadline is **FOREVER BARRED**, **ESTOPPED**, and **ENJOINED** from asserting and enforcing

50

such claim against the Post Effective Date Debtor, or its estate, assets, properties, or interests in property.

## III.

### Distributions Under the Plan

### A.   The Distribution Record Date

44.      In accordance with Section 1.36 of the Plan, the Distribution Record Date is five (5) Business Days from and after the date on which the clerk of the Court enters this Order on the docket (*i.e.*, Confirmation Date).

45.      As of the close of business on the Distribution Record Date, the various transfer and claims registers for each of the classes of Claims as maintained by the Debtor or its agents shall be **CLOSED**, and there shall be no further changes in the record holders of any of the Claims.  The Debtor and the Post Effective Date Debtor shall have no obligation to recognize any transfer of the Claims occurring after the close of business on the Distribution Record Date. The Debtor and the Post Effective Date Debtor shall be entitled to recognize and deal under the Plan only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.  Any transfers of Claims still pending as of the Distribution Record Date shall be deemed to have occurred prior to the Distribution Record Date if such transfers become final.

### B.   Plan Procedures

46.      The provisions in Articles V, VI, and VII of the Plan governing distributions, reserves, and the procedures for resolving and treating Disputed Claims under the Plan are **APPROVED**.

US_ACTIVE:\44182337\7\39982.0005

## C.  Late Filed Claims

47.    Without prejudice to the right of the Debtor, the Post Effective Date

Debtor, or any other party in interest to object to a proof of claim filed after any applicable bar

date as untimely, Administrative Expenses filed on or before the applicable deadline, or timely

filed Plan Rejection Proofs of Claim, any proof of claim filed after the Distribution Record Date

automatically shall be **DEEMED NOT TIMELY FILED** and **EXPUNGED IN ITS**

**ENTIRETY,** and any claim asserted therein shall be **DEEMED DISALLOWED IN ITS**

**ENTIRETY** without any further action by the Debtor or the Post Effective Date Debtor.

**IV.**

## Compensation and Reimbursement of Administrative Expenses

48.    Pursuant to Section 2.1(b) of the Plan, all entities seeking an award by the

Court of compensation for services rendered or reimbursement of expenses incurred through and

including the Confirmation Date under section 330 of the Bankruptcy Code or applications for

allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4),

or 503(b)(5) of the Bankruptcy Code shall file their respective final applications for allowance of

compensation for services rendered and reimbursement of expenses incurred and applications for

allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4),

or 503(b)(5) of the Bankruptcy Code by the first Business Day that is **forty-five (45) days** from

and after the Effective Date.

49.    The Allowed Amount of all Administrative Expenses arising under

section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall be

paid in full, in Cash, upon the later of (i) the Effective Date and (ii) the date upon which any such

Administrative Expense becomes Allowed.

52

# V.

## Effects of Confirmation

### A.  Conditions Precedent to the Effective Date

50.    Nothing in this Order shall in any way affect the provisions of Section 9.3 of the Plan.

### B.  Vesting of Assets

51.    In accordance with section 1141(b) of the Bankruptcy Code and Section 10.1 of the Plan, upon the occurrence of the Effective Date, except as otherwise expressly provided in the Plan, title to all of the Debtor's assets, properties, and interests in property shall vest in the Post Effective Date Debtor **FREE** and **CLEAR** of all Claims, Equity Interests, encumbrances, and any other interests.

### C.  Binding Effect

52.    In accordance with section 1141(a) of the Bankruptcy Code and Section 10.2 of the Plan, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted or rejected the Plan.

### D.  Releases

53.    As of the Effective Date, and in consideration of the substantial contribution of Jericho Acquisitions and any Purchaser and their respective Affiliates, the Debtor shall be deemed to and hereby unconditionally and forever release each of Jericho Acquisitions and any Purchaser and their Affiliates, and their respective present or former directors, managers, officers, members, equity holders (and their respective Affiliates), employees, agents, financial advisors, partners, attorneys, and other professional advisors or representatives from any and all

53

Claims, demands, Causes of Action and the like, relating to the Plan as of the Effective Date or

thereafter arising from any act, omission, event or other occurrence that occurred on or prior to

the Effective Date; *provided*, *however*, that nothing in this release shall be construed as a release

of any obligations of any Purchaser, or any claims arising, under the Purchase Agreement or any

agreements relating to, or entered into in connection with, the Purchase Agreement.

## E.  Exculpation

54.    **NONE** of the Debtor, the Post Effective Date Debtor, Wells Fargo,

Jericho Acquisitions and any Purchaser, Gordon Brothers Retail Partners, LLC, and Hilco

Merchant Resources, LLC, or any of such parties' respective officers, directors, managers,

members accountants, financial advisors, investment bankers, agents, restructuring advisors,

attorneys, and representatives (solely in their capacity as officers, directors, managers, members,

accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys,

consultants and representatives) **SHALL HAVE** or **INCUR ANY LIABILITY** for any act

taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Case, the

formulation, dissemination, confirmation, consummation or administration of the Plan, property

to be distributed under the Plan, or any other act or omission in connection with the Chapter 11

Case or the Plan (in each case whether arising prior to or following the Commencement Date);

*provided*, *however*, that the foregoing shall not affect the liability of any person under any

contracts, instrument, document, or other agreement with the Debtor or any liability that

otherwise would result from any such act or omission to the extent such act or omission is

determined by a Final Order to have constituted willful misconduct or gross negligence;

*provided*, *further*, that nothing in this Plan shall limit the liability of the professionals of the

Debtor to their respective clients pursuant to Rule 1.8(h)(1) of the New York Rules of

Professional Conduct.

US_ACTIVE:\44182337\7\39982.0005

**F.    Reservation of Causes of Action/Reservation of Rights**

          55.    Nothing in the Plan, except as set forth in Sections 10.7 and 10.8 of the

Plan, or this Order, except for paragraphs 47 and 48 hereof, shall be deemed to be a waiver or the

relinquishment of any rights or Causes of Action that the Debtor or the Post Effective Date

Debtor may have or may choose to assert against any parties.

**G.    Terms of Injunctions and Stays**

    **1.    Injunction or Stay**

          56.    Except as otherwise expressly provided herein or in the Plan, all Persons

or entities who have held, hold or may hold Claims or Administrative Expenses against the

Debtor or the Estate are **PERMANENTLY** and **FOREVER STAYED**, **RESTRAINED**, and

**ENJOINED**, from and after the Effective Date, from taking any of the following actions:

      a.    commencing or continuing in any manner any action or other proceeding of any kind on or with respect to or in any way related to any such Claim or Administrative Expenses against the Post Effective Date Debtor or any of its respective assets or properties, including, without limitation, any distributions or transfers made (including to holders of Equity Interests) payable from the assets or properties of the Estate or the Post Effective Date Debtor;

      b.    the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Post Effective Date Debtor or any of its respective assets or properties, including, without limitation, any distributions or transfers made (including to holders of Equity Interests) payable from the assets or properties of the Estate or the Post Effective Date Debtor, with respect to or in any way related to such Claim or Administrative Expense;

      c.    creating, perfecting or enforcing any encumbrance of any kind against the Post Effective Date Debtor or against the property or interests in property of the Post Effective Date Debtor with respect to or in any way related to such Claim or Administrative Expense;

      d.    asserting any right of setoff, subrogation or recoupment of any kind against any obligation due the Post Effective Date Debtor or against the property or interests in property of the Post Effective

Date Debtor with respect to or in any way related to such Claim or Administrative Expense;

e.  acting or proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan or this Order;

f.  commencing, continuing, or asserting in any manner any action or other proceeding of any kind with respect to any Claims or Administrative Expenses that are extinguished, released or settled pursuant to the Plan; and

g.  taking any actions to interfere with the implementation or consummation of the Plan.

**2.      Continuation of Existing Injunctions**

57.      Unless otherwise provided in this Order, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date **REMAIN IN FULL FORCE** and **EFFECT** until the Effective Date; *provided*, *however*, that no such injunction or stay shall preclude enforcement of parties' rights under the Plan, this Order, or any agreements assumed under section 365 of the Bankruptcy Code prior to the occurrence of the Effective Date or entered into during the Chapter 11 Case.

## VI.

### Other Provisions

**A.   Payment of Statutory Fees**

58.      The Debtor shall pay all fees payable pursuant to section 1930 of title 28 of the United States Code due and owing as of the Effective Date on or before the Effective Date.  The Post Effective Date Debtor shall pay all post-confirmation and post-consummation fees that are due and payable until the Chapter 11 Case is closed pursuant to section 305(a) of the Bankruptcy Code.

US_ACTIVE:\44182337\7\39982.0005

## B.   Exemption from Transfer Taxes

59.    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without express or implied limitation, any assignments of Real Property Leases made pursuant to the Purchase Agreement or in connection with any other dispositions of assets contemplated by the Plan **SHALL NOT BE SUBJECT TO** any sales and use, stamp, real estate transfer, mortgage recording, or other similar tax.

## C.   Purchaser Is Not a Successor in Interest

60.    The Purchaser shall not be deemed to (i) be the successor of the Debtor by reason of any theory at law or in equity, (ii) except with respect to the Real Property Leases and as specifically set forth herein, in the Plan and in the Purchase Agreement and any other agreements entered into in connection with the Purchase Agreement (including, without limitation, any agreements with any Affiliates of the Debtor), assume, incur or be responsible for any Claims or Liabilities of the Debtor or any of its Affiliates, (iii) have, de facto or otherwise, merged with or into the Debtor, or (iv) be a mere or substantial continuation of the Debtor or the enterprise of the Debtor.  The Purchaser shall not assume or have any liability or obligation for any Claim against the Debtor except for those liabilities specifically assumed by the Purchaser pursuant to the terms of the Purchase Agreement.

## D.   Return of Utility Security Deposits

61.    To the extent a utility received a security deposit pursuant to section 366 of the Bankruptcy Code, the utility shall return the security deposit to the Post Effective Date Debtor within **twenty-eight (28) days** after the date of this Order; ***provided***, ***however***, a utility

US_ACTIVE:\44182337\7\39982.0005

shall have no obligation to return such deposit until it has received wiring instructions from the

Post Effective Date Debtor.

**E.   Valuation**

62.    The valuation provided for under Section 2.6 of the Purchase Agreement

is without prejudice to the rights of any third parties not a party to the Purchase Agreement.

**F.   Retention of Jurisdiction**

63.    The Court shall have exclusive jurisdiction, including, without limitation,

subsequent to the Effective Date, to hear and determine all matters arising out of, or related to,

the Chapter 11 Case, this Order, and the Plan pursuant to, and for the purposes of,

sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, any matter that

relates to the matters set forth in Article X of the Plan and the assumption and assignment or

rejection of certain Real Property Leases pursuant to a separate order of the Court, including,

without limitation, the Consensual Extension Orders and such orders of the Court as may be

entered consistent with the terms of the Consensual Extension Orders.  To the extent the Court is

not permitted under applicable law to preside over any of the matters referred to in Article XI of

the Plan, the District Court shall have jurisdiction over such matters.

**G.   Notices of Confirmation and Effective Date**

64.    The form of notice of entry of this Order attached hereto as ***Exhibit "A"***

(the "***Notice of Confirmation***") and the abridged publication version of the Notice of

Confirmation attached hereto as ***Exhibit "B"*** are **APPROVED**.

65.    On or before the **fourteenth (14th) day** following the Effective Date, the

Debtor shall serve the Notice of Confirmation on the following parties by first class mail,

postage-prepaid or electronic mail:

(a)    the U.S. Trustee;

58

(b)    the Securities and Exchange Commission, the Internal Revenue Service, and the United States Attorney's Office for the Southern District of New York;

(c)    all known creditors and interest holders of the Debtor;

(d)    all parties to executory contracts and unexpired leases listed on the Debtor's Schedules;

(e)    the attorneys of record for all parties to pending litigation against the Debtor (as of the date of the entry of the Confirmation Procedures Order);

(f)    all equity security holders; and

(g)    any other party that has filed a request for service of pleadings in the Chapter 11 Case pursuant to Rule 2002 on or before the Confirmation Date.

66.    The Debtor shall publish the Notice of Confirmation (which may be an abridged version of the Notice of Confirmation) within fourteen (14) days following the Effective Date once in the weekday edition of each of *The New York Times* and *Women's Wear Daily*.

67.    Within **seven (7) days** after the Effective Date, the Post Effective Date Debtor shall file with the Court a notice of the occurrence of the Effective Date.

## H.   Integrated Order

68.    The provisions of this Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of this Court.

## I.   Failure to Specify a Plan Provision

69.    The failure specifically to include any particular provision of the Plan in this Order shall not diminish or impair the efficacy of such provision, it being understood that it is the intent of this Court that the Plan be confirmed and approved in its entirety.

US_ACTIVE:\44182337\7\39982.0005

**J.    Inconsistencies**

70.    In the event of any inconsistency between the Plan and this Order, this

Order shall govern.

**K.    Postconfirmation Notice**

71.    The Debtor shall comply with the following, except to the extent the Court

orders otherwise:

(a)    Periodic Status Reports.  Subject to the requirements set forth in section (c) of this paragraph and section 1106(a)(7) of the Bankruptcy Code, the Debtor shall file, within 45 days after entry of this Order, a status report detailing the actions taken by the Debtor and the progress made towards the consummation of the Plan.  Reports shall be filed thereafter every January 15th, April 15th, July 15th, and October 15th until a final decree has been entered.

(b)    Notices.  The Debtor shall mail a copy of the Confirmation Order by email or first class mail to all parties who have filed a notice of appearance in this chapter 11 case.

(c)    Closing Report and Final Decree.  Within twenty eight (28) days after the final adjudication of all pending matters, including, without limitation, any claims objections, in this chapter 11 case, the Debtor shall file a closing report in accordance with Rule 3022-1 of the Local Bankruptcy Rules of the Southern District of New York and an application for final decree.  If the Debtor fails to comply with this Order, the Clerk shall so advise the Judge and an order to show cause may be issued.

US_ACTIVE:\44182337\7\39982.0005

**L.   Immediate Effect of Order**

72.     Notwithstanding the applicability or possible applicability of Bankruptcy

Rules 3020(e), 6004(h), 6006(d) or 9014, the terms and conditions of this Order shall be

immediately effective and enforceable upon its entry, and the provisions of these Bankruptcy

Rules shall not apply to the transactions approved hereby.


Dated: April 1, 2013
        New York, New York

                                              _____/s/Martin Glenn_____
                                                   MARTIN GLENN
                                              United States Bankruptcy Judge

US_ACTIVE:\44182337\7\39982.0005

**<u>Exhibit A</u>**

**Notice of Confirmation**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                             :

*In re*                                :          **Chapter 11**

                                      :

**DAFFY'S, INC.,**                    :          **Case No. 12-13312 (MG)**

                                      :

          **Debtor.**                  :

                                      :
-------------------------------------------------------------x

**NOTICE OF (A) ENTRY OF ORDER CONFIRMING
THE DEBTOR'S PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY
CODE, AS FURTHER MODIFIED, AND (B) OCCURRENCE OF THE EFFECTIVE DATE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

      **1.**     **Confirmation of the Plan**.  By that certain order, dated March ___, 2013 (the "***Confirmation Order***"),[1] the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***") confirmed the chapter 11 plan (the "***Plan***")[2] of Daffy's Inc. (the "***Debtor***", and as reorganized after the Effective Date, the "***Post Effective Date Debtor***").  Unless otherwise defined in this notice, capitalized terms and phrases used herein have the meanings set forth in the Plan.

      **2.**     **Occurrence of the Effective Date**.  On March __, 2013, the "Effective Date" of the Plan occurred.

      **3.**     **Copies of the Plan and Confirmation Order**.  The Plan and Confirmation Order are available for inspection during regular business hours in the Office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004-1408.  The Plan and Confirmation Order are also available at www.donlinrecano.com/daffys, or by contacting Donlin, Recano & Company directly at **(800) 896-7421**.

      **4.**     **Effect of the Occurrence of the Effective Date**.  As of the Effective Date, the Plan, among other things, binds any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns; revests property of the Debtor's estate in the Post Effective Date Debtor free and clear of all Claims, Liens, encumbrances, charges and other interests (except as otherwise provided in the Plan or Confirmation Order); and operates as an injunction with respect to any debt discharged.

      **5.**     **Compensation of Professionals**.  Pursuant to Section 2.1(b) of the Plan and decretal paragraph 48 on page 52 of the Confirmation Order, all entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and

---

[1] *Order Confirming the Debtor's Plan Under Chapter 11 of the Bankruptcy Code, as Further Modified*, dated March ___, 2013 [Docket No. ____].

[2] *See Debtor's Plan Under Chapter 11 of the Bankruptcy Code, as Further Modified*, dated February 13, 2013 [Docket No. 948].

including the Confirmation Date under section 330 of the Bankruptcy Code or applications for allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code must file, **by May __, 2013**,[3] their respective (i) final applications for allowance of compensation for services rendered and reimbursement of expenses incurred or (ii) applications for allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

**6.      Specified Administrative Expenses Incurred After October 30, 2012**.  Pursuant to Section 2.1(a) of the Plan and decretal paragraphs 36 through 43 on page 48 through 50 of the Confirmation Order, all entities seeking payment of Specified Administrative Expenses (as defined in the Confirmation Order) incurred *after* October 30, 2012, must file, by **May __, 2013**,[4] their respective proofs of Administrative Expenses with the Debtor's Noticing Agent, Donlin, Recano & Company as set forth in greater detail in the Confirmation Order.

**7.      Address Changes**.  If you filed a proof of claim against the Debtor or hold a claim scheduled on the Debtor's schedules and your address has or may change, please send your current address by email, to eschwartz@omnimgmt.com or by fax, to (818) 704-0415, **September 30, 2013**. **You may forfeit payment of your claim if the Debtor's records do not reflect your current address.** The Debtor's schedules are available at **www.donlinrecano.com/daffys** or by calling **(800) 896-7421.**

**8.      Unclaimed Distributions**.  Pursuant to Section 6.5 of the Plan, any distribution under the Plan that is unclaimed for a period of six (6) months after distribution thereof shall be deemed not to have been made and shall be transferred to the Post Effective Date Debtor, free and clear of any claims or interests of any entities, including, without express or implied limitation, any claims or interests of any governmental unit under escheat principles.  If your distribution is not deliverable because the Debtor's records do not reflect your current address, your distribution will be considered unclaimed.

Dated: _____, 2013
New York, New York

Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*ATTORNEYS FOR THE*
*POST EFFECTIVE DATE DEBTOR*

---

[3] Such date represents the first Business day that is forty-five (45) days after the Effective Date.

[4] Such date represents forty-five (45) days after the Effective Date.

US_ACTIVE:\44182337\7\39982.0005

## <u>Exhibit B</u>

**Notice of Confirmation (Publication Version)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
*In re*                                              :        **Chapter 11**
**DAFFY'S, INC.,**                                   :        **Case No. 12-13312 (MG)**
            **Debtor.**                              :
-------------------------------------------------------------x

### NOTICE OF (A) CONFIRMATION OF THE DEBTOR'S PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS FURTHER MODIFIED, AND (B) THE EFFECTIVE DATE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

    **Confirmation of the Plan.**  By that certain order, dated March [__], 2013 [Docket No. [__] (the "***Confirmation Order***"), the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***") confirmed the chapter 11 plan, dated February 13, 2013 [Docket No. 948] (the "***Plan***"), of Daffy's Inc. (the "***Debtor***," and as reorganized after the Effective Date, the "***Post Effective Date Debtor***").  Unless otherwise defined in this notice, capitalized terms and phrases used herein have the meanings set forth in the Plan.

    On March [__], 2013 (the "***Effective Date***"), the Plan became effective.  As of the Effective Date, the Plan, among other things, binds any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns; revests property of the Debtor's estate in the Post Effective Date Debtor free and clear of all Claims, Liens, encumbrances, charges and other interests (except as otherwise provided in the Plan or Confirmation Order); and operates as an injunction with respect to any debt discharged.

    **Specified Administrative Expenses Incurred After October 30, 2012**.  All entities seeking payment of Specified Administrative Expenses (as defined in the Confirmation Order) incurred <u>after</u> October 30, 2012 must file a proof of Administrative Expense by **[__]:00 p.m. (EDT) on April [__], 2013.  Failure to file a proof of Administrative Expense will bar any payments on such Specified Administrative Expense.**  More information and instructions on whether an Administrative Expense is a Specified Administrative Expense or how to file a proof of Administrative Expense are available at **www.donlinrecano.com/daffys** or by calling **(800) 896-7421.**

    **Address Changes.**  If you filed a proof of claim against the Debtor or hold a claim scheduled on the Debtor's schedules and you have not received notices relating to the Debtor's chapter 11 case, please send your current address by email, to eschwartz@omnimgmt.com or by fax, to (818) 704-0415, **September 30, 2013**.  **You may forfeit payment of your claim if the Debtor's records do not reflect your current address.**  The Debtor's schedules are available at **www.donlinrecano.com/daffys** or by calling **(800) 896-7421.**

    **Unclaimed Distributions**.  **Pursuant to Section 6.5 of the Plan, any distribution under the Plan that is unclaimed for a period of six (6) months may be forfeited**.  **If your distribution is not deliverable because the Debtor's records do not reflect your current address, your distribution will be considered unclaimed.**

    For more information or questions about this notice, including, copies of the Plan and Confirmation Order, please visit **www.donlinrecano.com/daffys** or call **(800) 896-7421.**